STUDENT LOAN MARKETING
ASSOCIATION, Respondent,

v.

Abdulrahman A. RAJA, Appellant.

No. WD 50339.

Missouri Court of Appeals,
Western District.

Jan. 2, 1996.

Motion for Rehearing and/or Transfer to
Supreme Court Denied Feb. 27, 1996.

J. Michael Murphy, Liberty, for appellant.

Keith J. Shuttleworth, Susan Saper Galamba, Buck, Bohm & Stein, P.C., Kansas City, for respondent.

Before BRECKENRIDGE, P.J., and ULRICH and LAURA DENVIR STITH, JJ.

LAURA DENVIR STITH, Judge.

Defendant–Appellant Abdulrahman Raja appeals from a trial court judgment against him and in favor of Plaintiff–Respondent Student Loan Marketing Association ("SLMA") in the total amount of $82,861.19 (which includes $50,202.58 in principal, plus interest and attorney's fees), the amount due and owing on three educational promissory notes.

This is the second appeal of this case. In the first appeal, *Student Loan Mktg. Ass'n v. Raja*, 878 S.W.2d 830 (Mo.App.1994), this Court affirmed summary judgment against Mr. Raja but found that the interest figure included in the judgment was duplicative. This Court thus remanded for the trial court to recalculate the amount of principal and interest owing on the three notes. In this second appeal, Mr. Raja contends the trial court erred on remand by not following the opinion and mandate of this Court on the first appeal regarding the calculation of principal and interest. Mr. Raja also contends there was not substantial evidence to support the trial court's findings as to the amount of interest due and owing.

We hold that the trial court did not err in its recalculation of interest and principal upon remand. While this Court held on the first appeal that the interest previously calculated was duplicative, it also specifically ordered the trial court to recalculate interest and principal on remand. To the extent the recalculation was based on evidence not available to this Court in the prior appeal, and which revealed that the principal and interest amounts sought were not duplicative, the trial court properly resolved any conflict in this Court's mandate by calculating the true and correct amount of interest owed based on the evidence then presented. Alternatively, this Court has the power on appeal to correct a mistake in its prior mandate. Finally, there was substantial evidence to support the trial court's finding of the amount of accrued interest.

## I. FACTUAL AND PROCEDURAL BACKGROUND

This is the second appeal in this case involving three educational promissory notes between the borrower Defendant–Appellant Abdulrahman Raja and the lender Plaintiff–Respondent Student Loan Marketing Association ("SLMA").

Mr. Raja executed three promissory notes in the original amounts of $15,000, $6,000, and $5,000. The loan proceeds were disbursed to Mr. Raja on September 1, 1981,

October 20, 1983, and June 10, 1983, respectively. These notes were health educational assistance loans, otherwise known as HEAL loans, to be used for postgraduate medical education.

SLMA is a congressionally-chartered private corporation which acts as a secondary market for the student loan industry. SLMA purchases student loans from private banks, returning funds to the banks so that additional loans can be made. In March, 1985, SLMA purchased Mr. Raja's three promissory notes from the original lender. As the purchaser of the notes, SLMA owns, holds and services the notes for the life of the loan.

Mr. Raja defaulted on the notes on September 30, 1988. As a result, SLMA filed suit against Mr. Raja seeking recovery of the amounts due, plus interest and attorney's fees.

On the first appeal of this case, Mr. Raja appealed from a grant of summary judgment in favor of SLMA on the three promissory notes in the amount of $50,252.21, designated as principal, plus $20,499.81 in pre-judgment interest awarded as of May 28, 1993. This Court upheld the grant of summary judgment in favor of SLMA. *Student Loan Mktg. Ass'n v. Raja,* 878 S.W.2d 830 (Mo. App.1994). The total amount of the judgment was not contested by either party. This Court, however, *sua sponte* remanded the case for a recalculation of the principal and interest amounts owing on the three promissory notes, stating as follows:

> Unmentioned by either party to the appeal, the $50,252.21, denominated "principal" in the petition, and in the judgment, to which is added $20,499.81 pre-judgment interest, is incorrect. We deal with it as plain error under Rule 84.13(c). The $50,-252.21 principal figure actually includes interest accrued to April 30, 1993, on the $6,000 note, and interest accrued to April 20, 1993, on the $5,000 and $15,000 notes. *The $20,499.81 prejudgment interest item in the judgment is therefore duplicative. We remand to the trial court for recalculation of the principal and interest owing.*
>
> *Id.* at 832 (emphasis added).

SLMA filed a Motion for Rehearing in this Court, explaining that the amount denominated as "principal" included not only the original principal amounts of the loans, but also interest that had been capitalized into the principal as permitted by regulations regarding HEAL loans, 42 C.F.R. § 60.13(b), and the express language of the three promissory notes. Moreover, the $20,499.81 interest amount was not duplicative interest, but rather was interest which had accrued and had not been capitalized since Mr. Raja defaulted on the three notes in September, 1988. This Court denied the Motion for Rehearing. No Application for Transfer was filed in the Supreme Court.

Upon remand, the trial court conducted an evidentiary hearing at which new evidence was presented concerning how to recalculate the amount of principal and interest owing. David W. Twigg, the coordinator of HEAL loans for SLMA, testified regarding how SLMA calculated the principal balance and interest owed on the three promissory notes. Mr. Twigg explained that, under the HEAL loan program, interest begins to accrue immediately upon the disbursement of the loan proceeds to the student. The rate at which interest accrues is established by the Public Health and Welfare Act, 42 U.S.C.A. § 201 *et seq.* The interest rate is a variable rate which is based on the 90–day Treasury bill, plus 3.5 percentage points rounded to the nearest one-eighth percent. This rate changes quarterly based on the performance of the Treasury bill the previous quarter.

Mr. Twigg also explained that any accrued interest could be compounded or "capitalized" into the principal. The student has the option of making payments of principal and interest, or of making "interest-only" payments. These payments, however, can be deferred at the option of the student. If the student chooses to make interest-only payments, and then chooses to defer these payments, the interest that has accrued on the principal balance is "capitalized," that is, compounded, into the principal balance on a semi-annual basis.

The result is that the principal balance is increased by the amount of previously accrued interest and the interest owed is temporarily reduced to zero. This capitalization process is repeated semi-annually until the

student begins to repay interest, and eventually principal. 42 C.F.R. § 60.13(b).[1]

If at any point the student borrower ceases making payment of accrued interest or principal, the loan goes into default and the capitalization process stops. Any interest which accrues between the time of default and the time of payment on the loan is not compounded into the principal, but rather continues to be treated as interest.

The evidence was that Mr. Raja executed three promissory notes. Interest began to accrue on each note immediately upon the disbursement of the loan proceeds to Mr. Raja, to wit, on September 1, 1981 for the $15,000.00 note; on October 20, 1983 for the $6,000.00 note; and on June 10, 1983 for the $5,000.00 note. The three promissory notes executed by Mr. Raja stated that interest could be capitalized in the manner described above if, as was the case here, Mr. Raja chose to make interest-only payments and to defer even those payments. Mr. Twigg explained that the interest due was thus capitalized into the principal.

SLMA purchased these notes from the original lender in March, 1985. Mr. Twigg testified that he had a document published by the Department of Health & Human Services which reflected the quarterly interest rates for the notes from the date of disbursement up and until SLMA purchased the notes. Mr. Twigg's figures where not challenged, and thus this document was not entered into evidence by counsel for SLMA. Rather, documents were entered into evidence which showed the total principal amounts (including capitalized interest up to that point) as of the time of purchase in March, 1985. Mr. Twigg testified that these figures were verified during a pre-note examination that was conducted by the SLMA purchasing staff. During this examination, the purchasing staff reviewed the records of the original lender to verify the amounts due.

Interest continued to be capitalized on Mr. Raja's notes until September 30, 1988, when Mr. Raja defaulted on the notes. Interest continued to accrue after that date, but was no longer capitalized. Mr. Twigg produced records which showed the interest rates charged on the notes from the date of purchase by SLMA, March, 1985, to the present. These indicated total principal amounts of $31,859.33, $9,928.31 and $8,414.94, respectively. The accrued interest on each note from the date of default, September 30, 1988, through October 21, 1994, the date of the evidentiary hearing, was $16,113.44, $4,865.21, and $4,149.57, respectively.

Mr. Raja did not offer any evidence to dispute this testimony.

Based on this evidence, the trial court found that accrued interest on the notes was capitalized into the principal through September 30, 1988. After that point, interest continued to accrue on the three notes, but was not capitalized. The trial court thus entered judgment in favor of SLMA and against Mr. Raja for the amount of principal, including capitalized interest added to the principal up to the date of default, plus interest on that sum from the date of default until the date of trial. Specifically, the trial court ordered Mr. Raja to pay "the amount of $50,202.58 (representing principal which includes accrued interest which was capitalized), and accrued interest on such amount at the contract rates subsequent to September 30, 1988 in the amount of $25,128.22, and that plaintiff is entitled to a reasonable attorney's fee in the amount of $7,530.39." This resulted in a total judgment against Mr. Raja in the amount of $82,861.19.

This timely appeal followed.

## II. THE TRIAL COURT DID NOT VIOLATE THE "LAW OF THE CASE" DOCTRINE

### A. The Trial Court had Discretion to Correct the Mathematical Error in the Opinion of This Court in Accordance with New Evidence Presented on Remand and in a Manner Consistent with the General Language of the Mandate, in this Case in Which this Court's Opinion and Mandate Partially Conflicted.

Mr. Raja contends that the trial court's judgment should be reversed because it does

---

1. 42 C.F.R. § 60.13(b) states in part that:
   Interest accrues from the date the loan is disbursed until the loan is paid in full. Unpaid accrued interest shall be compounded not more frequently then semiannually and added to principal.

not follow the mandate and opinion of this Court in the first appeal of this case finding that the $20,499.81 pre-judgment interest figure was duplicative of a portion of the principal. Mr. Raja contends that the trial court violated the "law of the case" doctrine by entering a judgment that was not consistent with the mandate, citing to *Hankins v. Hankins,* 864 S.W.2d 351 (Mo.App.1993).

■■■ The law of the case doctrine is well-established in Missouri. Pursuant to this doctrine, prior decisions of the appellate court become the law of the case in any subsequent proceedings, and the "trial court is without power to modify, alter, amend or otherwise depart from ..." those decisions. *Hankins,* 864 S.W.2d at 353. As further explained in *Hankins:*

> When a point decided at the appellate level comes before a lower court on further proceedings in the same case, the lower court does not have the jurisdiction to overrule the appellate court. If the lower court disregards the law of the case, the issue is not simply whether that court is correct in its construction of the appellate decision, but rather whether the court is within its lawful jurisdiction.

*Id.* (citations omitted). Any trial court proceedings "contrary to the directions of the mandate are 'null and void.' " *Id.*

■■■ In determining whether or not the actions of the trial court were in accordance with the law of the case, this Court looks not only to the mandate, but also to the results contemplated in the opinion of the court. "[T]he mandate is not to be read and applied in a vacuum. The opinion is part of the mandate and must be used to interpret the mandate...." *Frost v. Liberty Mut. Ins. Co.,* 813 S.W.2d 302, 305 (Mo. banc 1991) (citations omitted). In the case of a "general mandate" to enter judgment consistent with the opinion, the trial court has "discretion on the mechanics ... directed by the mandate." *Manor v. Manor,* 706 S.W.2d 603, 605 (Mo. App.1986).

*Hankins,* relied on by the borrower, was a second appeal from an order of the trial court denying a motion to amend a decree of legal separation following remand from the Court of Appeals. *Hankins,* 864 S.W.2d at 352–53. On the first appeal, the appellate court affirmed in part and modified in part the trial court's decree. The mandate also stated that upon remand "[t]he Court is further directed to modify the decree to award [husband] the sum of $16,666.00 to be paid by [wife]." *Id.* at 352.

The trial court followed the mandate upon remand and awarded husband $16,666.00. Husband filed a motion to amend, contending that the amount specified in the decree was less than what he should have received and must have been the result of a mathematical error by the appellate court. *Id.* The trial court denied the motion on the basis that it was without authority to proceed in a fashion inconsistent with the mandate. *Id.* at 353. The husband appealed.

On the second appeal, *Hankins* affirmed the trial court's refusal to amend its decree based on the doctrine of the law of the case. It noted that the mandate *expressly directed* the trial court to award appellant $16,666.00 and did not give the trial court any discretion to modify this amount. *Id.* at 354. In so holding, *Hankins* further explained that:

> This is not a case where there is a scrivener's error in the mandate which is readily and unmistakably seen by reference to the text of the opinion. No error was patent, either on the face of the mandate, or in comparison of the mandate to the opinion.

*Id.* The trial court, thus, "lacked the jurisdiction to contradict this court's mandate...." *Id.*

■■■ Unlike *Hankins,* the mandate and opinion of this Court on the first appeal, in effect, gave the trial court two contradictory orders. Neither party raised the issue of the proper calculation of interest and principal at the time of the initial appeal. As such, this Court on the first appeal dealt with the issue *sua sponte* as plain error under Rule 84.13(c). The appellate record at that time showed that three loans had been executed in the total principal amount of $26,000.00, yet the trial court had inexplicably entered judgment in the principal amount of $50,252.21. Based on the evidence presented, this Court concluded that at least the sum of the interest must be duplicative.

In an attempt to correct this problem, the opinion and mandate of this Court gave two orders to the trial court upon remand. First, the opinion stated that the principal amount awarded included interest to April, 1993, and thus the additional award of prejudgment interest for that period of time was duplicative. Second, the court remanded the case to the trial court using what could be considered the language of a "general mandate" for a "recalculation of the principal and interest owing." In so doing, we *sub silentio* recognized that we did not have a sufficient record to determine the proper amount of interest that was due and owing, and so required the assistance of the trial court on remand to determine that amount.

Upon remand, it became evident that the pronouncement that interest was duplicative was inconsistent with the directive to recalculate interest and principal *owing*. This was because pursuant to federal law, 42 C.F.R. § 60.13(b), and the express terms of the promissory notes, the principal amount reflected the interest that had been capitalized into the principal up to the date of default on September 30, 1988. Moreover, it became evident that pre-judgment interest, which was not capitalized into the principal, was also due for the additional interest which accrued between the default by Mr. Raja on September 30, 1988, and the date of trial.

The trial court on remand thus could not follow both the general mandate to correctly calculate the interest and principal "owing," and also follow the language in the opinion stating that the first judgment improperly awarded duplicative interest. It properly reconciled the opinion to the extent possible by avoiding awarding duplicative interest, in a manner that was consistent with the facts presented before the trial court on remand and with this Court's general mandate to calculate the amount owing to SLMA.

### B. On a Second Appeal After Remand, This Court has the Power to Correct Errors in its First Opinion.

We alternatively note that if, as in *Hankins*, this Court had ordered that a specific sum be paid in its mandate in the first appeal, rather than leaving the trial court discretion to calculate this amount, the trial court would have been required to follow this mandate and enter judgment in the amount specified. *Hankins*, 864 S.W.2d at 354.

The trial court could, however, have noted the error and on appeal this Court would have had the discretion to consider whether this was one of the rare cases in which an appellate court can make an exception to a law of the case doctrine. Such exceptions exist because the law of the case doctrine is "a rule of policy and convenience, a concept that involves discretion." *Bandy v. State*, 847 S.W.2d 93, 94 (Mo.App.1992). As such, an *appellate court* on a second appeal has discretion to "refuse to apply the doctrine where the first opinion arose from mistake or resulted in a manifest injustice." *Id.* See also *Williams v. Ford Motor Co.*, 454 S.W.2d 611, 614 (Mo.App.1970). As explained in *Laclede Inv. Corp. v. Kaiser*, 596 S.W.2d 36 (Mo.App.1980):

> An appellate court is a court for the correction of errors-its own as well as others. In correcting the errors of lower courts we do not need proceed on the theory we make none of our own . . .
>
> Whether from grace or right when cogent and convincing reasons appear . . . and where no injustice or hardship would flow from a change, or where by inadvertence principles of law have been incorrectly declared the first time, or mistake of fact has been made, or injustice to the rights of parties would be done by adhering to the first opinion, then the exceptions to the rule have play, and it is our duty to reexamine and correct our own errors on the second appeal in the same case.

*Id.* at 41 (citations omitted). See also *Davis v. J.C. Nichols Co.*, 761 S.W.2d 735, 740 (Mo.App.1988) ("[i]f circumstances arise that cast doubt on the correctness of the law of the case as established on appeal, our procedures enable a litigant to press the appellate court to depart from the mandate . . . by appeal from the judgment entered after remand"); *Board of Regents of Southwest Mo. State Univ. v. Harriman*, 857 S.W.2d 445, 450–51 (Mo.App.1993) (finding an exception to the doctrine where appellate court on first appeal mistakenly determined that service

was not proper, a question of fact, based on record presented, and it was clear on second appeal that service was proper).

■ Not to correct the error of this Court on the first appeal would result in a manifest injustice to SLMA and a windfall to Mr. Raja in the amount of $20,499.81, which represents the amount of interest that this Court previously found to be duplicative. Mr. Raja executed three promissory notes which provided that interest would be capitalized into the principal as provided by federal law. Relieving Mr. Raja of this interest which is due and owing on notes which have been in default for seven years would be a manifest injustice to SLMA.

For both of these reasons, the judgment of the trial court in the amount of $82,861.19 against Mr. Raja and in favor of SLMA is affirmed.

## III. *THERE WAS SUBSTANTIAL EVIDENCE TO SUPPORT THE TRIAL COURT'S FINDING OF ACCRUED INTEREST*

Under Point II, Mr. Raja contends that there was not substantial evidence to support the trial court's finding that $25,128.22 in accrued interest was due and owing under the notes in question. Specifically, Mr. Raja contends that the record is devoid of any evidence regarding the interest rates that were charged on the three notes between the disbursement dates and March 1, 1985, the date the notes were purchased by SLMA.[2]

In support of his argument, Mr. Raja cites to *St. Louis Realty Fund v. Mark Twain S. County Bank 21*, 651 S.W.2d 568 (Mo.App. 1983). One issue in *St. Louis Realty* was whether the interest rate on a note was set or fluctuated with the prime rate. *Id.* at 573.

*St. Louis Realty* held that the interest rate fluctuated. *Id.* The court also held that the trial court's finding regarding the amount of interest that had accrued was not supported by substantial evidence because there was no evidence in the record regarding the prime rate fluctuations during the term of the note. *Id.* at 575. It thus remanded the case for the trial court to hear additional evidence sufficient to support its finding. *Id.*

Unlike *St. Louis Realty*, here there was substantial evidence to support the trial court's determinations regarding the amount of interest accrued. Mr. Twigg testified that he had with him at the evidentiary hearing a document published by the Department of Health & Human Services which reflected the quarterly interest rates from the dates of disbursement until SLMA purchased the notes. As these interest rates were not challenged, this document was not entered into evidence.[3] Rather, documents were entered into evidence which showed the total principal amounts as of the time of purchase, March, 1985, based upon these rates. Moreover, Mr. Twigg testified that the SLMA purchasing staff conducted a through review of the original lender's records to verify the amounts due on the student loans prior to SLMA purchasing the notes, and found them accurate.

Mr. Raja did not present any evidence which indicated that the amounts were other than what was verified by SLMA and testified to by Mr. Twigg. In addition, evidence was presented regarding the quarterly interest rates from the date of purchase by SLMA in March, 1985, through the present. This evidence was also uncontested by Mr. Raja. This constituted substantial evidence on which the trial court could base its deter-

---

2. It should be noted that the $25,128.22 figure actually represents interest accrued from September 30, 1988, to the time of entry of judgment by the trial court, and not accrued interest from the date of disbursement until March 1, 1985. While Mr. Raja uses this figure in his Point Relied On, in the body of the brief he indicates that he is only contesting the interest rates for the time period of the date of disbursement through March, 1985. We would be within our discretion in refusing to consider the appeal due to the failure of the argument to follow the Point Relied On. However, because we understand

the basis of the argument being made, we will consider it. *See State v. Sloan*, 756 S.W.2d 503, 505 n. 2 (Mo. banc 1988), *cert. denied*, 489 U.S. 1040, 109 S.Ct. 1174, 103 L.Ed.2d 236 (1989).

3. The existence of this document was discovered by Mr. Raja's counsel upon cross-examination of Mr. Twigg. Upon learning that he had these rates with him, Mr. Raja's counsel ceased his line of questioning. The document was not subsequently entered into evidence by SLMA.

mination of the total amount due and owing on the three promissory notes.

For these reasons, the judgment of the trial court entering judgment in favor of SLMA and against Mr. Raja is affirmed.

All concur.