**STATE of Missouri, DIVISION OF CHILD SUPPORT ENFORCE-MENT, Appellant,**

**Shelia J. Clark, Plaintiff,**

**v.**

**Ray A. PETTAWAY, Respondent.**

**No. WD 57451.**

Missouri Court of Appeals, Western District.

June 20, 2000.

Rehearing Denied Aug. 1, 2000.

Robert D. Noland, Kansas City, for appellant.

Ray A. Pettaway, Arlington, pro se.

Before JOSEPH M. ELLIS, Presiding Judge, PAUL M. SPINDEN, Judge and PATRICIA BRECKENRIDGE, Judge.

JOSEPH M. ELLIS, Judge.

Ray Anthony Pettaway (Pettaway) is the natural father of Ray Clark, born April 10, 1975, and Renard Clark, born March 26, 1977. The boys' natural mother is Sheila J. Clark. On May 2, 1990, the Circuit Court of Jackson County issued an order finding that Pettaway was the boys' natural father, and ordering him to pay the amount of $250 per month in child support beginning June 15, 1990. The court further found that Pettaway owed $5,403.20 in back child support, which had been paid to Clark by the state in the form of public assistance. The court ordered Pettaway to reimburse the state $25 per month beginning June 15, 1990, until the arrearage was paid in full.

In 1994, Pettaway petitioned the court to modify his child support obligation based on the fact that Ray had attained the age of majority. On June 7, 1994, the court issued an order terminating Pettaway's child support obligation as to Ray, and reducing his payments to $175 per month ($125 for Renard and $50 toward the arrearage). At the same time, the court noted Pettaway was then $7,914.31 in arrears on his child support payments, and stated, "[T]his order does not affect previous orders for support due, but not yet paid, which sums accrued prior to the dates the support obligations are terminated by virtue of this order."

On July 1, 1996, Pettaway filed a motion for termination of child support and back child support. In his motion, he stated that Renard had turned 18 on March 26, 1995. He requested that his obligation for Renard be terminated, and that the monthly payments he had made since March 1995 (15 months) be applied to his arrearage.[1] Pettaway also requested that payments he had made on behalf of Ray from the date he attained majority to the date of the court's previous order (15 months) be applied to his arrearage.[2] Following a hearing on August 12, 1996, the court entered its order sustaining Pettaway's motion to modify, declared Renard to be emancipated,[3] and ordered "any alleged payments upon arrearage in child support as of this date shall cease."

On August 12, 1997, the Division of Child Support Enforcement (Division) filed a motion to set aside the order of August 12, 1996, and to name Division as a necessary party in the action. In its motion, the Division claimed Pettaway owed $6,283.22 in "assigned support" and $5,403.20 in "State Debt." A hearing was held on August 27, 1998, wherein the court sustained the Division's motion and set aside its prior order. There is no indication in the legal file of any further action taken by the Division pursuant to the claimed debt.

On January 7, 1999, Pettaway filed a motion in the circuit court requesting a refund from the state in the amount of $2,218.40, which he claimed he had overpaid in child support. He claimed that on May 2, 1990, the court had ordered him to pay $5,403, and that he had since paid a total of $7,621.40, entitling him to a refund of $2,218.40. The court issued an order sustaining Pettaway's motion on May 3, 1999.[4] On May 21, 1999, the Division made a motion for entry of judgment pursuant to Rule 73.01, requesting that the court enter a judgment in the case for purposes of appeal. The trial court entered an amended judgment on June 7, 1999, sustaining Pettaway's January 7, 1999 motion. This appeal followed.

1. Pettaway's motion calculated this amount as $2,375. However, we note that the payments of $125 over 15 months would have totaled $1,875.

2. $125 × 15 months = $1,875. The total amount claimed as overpayments on both children would be $3,750, although Petta-

way's motion requested that $4,125 be applied to his arrearage.

3. The court's order refers to Renard erroneously as "Raymond Lamar Clark."

4. The court's order is dated "5/3/93," but stamped as filed 5/5/99.

In its sole point of error on appeal, the Division argues the trial court erred when it sustained Pettaway's motion for refund, because there was no substantial evidence to support such refund, in that Pettaway presented no evidence to prove that he had overpaid his child support obligation and was entitled to a refund. Pettaway contends the Division's documentation is incomplete and does not reflect all payments he has made.

■ Review of the trial court's decision on a motion to modify a child support obligation is governed by *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976); *Webb v. Fox*, 978 S.W.2d 16, 19 (Mo.App. W.D.1998). We will only reverse the decision of the trial court if it is against the weight of the evidence, if there is no substantial evidence to support it, or if it erroneously declares or applies the law. *Murphy*, 536 S.W.2d at 32.

■ A non-custodial parent paying child support pursuant to a court order is entitled to a refund of any monies paid subsequent to emancipation of the child for whom the support was paid. *See Smith v. Smith*, 17 S.W.3d 592, 598 (Mo.App. W.D. 1999); *Boland v. State Dept. of Social Serv., Div. of Child Support Enforcement*, 910 S.W.2d 754, 756 (Mo.App. W.D.1995). However, any overpayment made is to be offset by arrearages owed. *See Schaffer v. Haynes*, 847 S.W.2d 814, 819 n. 8 (Mo.App. E.D.1992). Overpayments may not be offset by paying lower amounts in the future. *Finley v. Morrow*, 697 S.W.2d 543, 544–45 (Mo.App. S.D.1985).

■ In evaluating Pettaway's argument, we look first to the trial court's orders of May 2, 1990, and June 7, 1994, to calculate the amounts of child support, both past due and current, which were due over the life of his obligation to his sons. The initial amount in the trial court's first order dated May 2, 1990, ($5,403.20) represented what the Division terms "assigned debt," or the amount of back child support which had been paid to Clark in the form of AFDC, and which was a standing debt to be reimbursed to the State by Pettaway at a rate of $25 per month. *In addition*, Pettaway was ordered to pay $250 per month in "current" child support. The court's order of June 7, 1994, states that the arrearage at that time totaled $7,914.31. Therefore, we conclude the court found Pettaway had not made all scheduled "current" child support payments in the interim.

The only dated documentation of payments submitted with the legal file is an automated payment record which begins July 23, 1992, and ends August 30, 1994.[5] From what we can determine, of the $12,000 Pettaway was to have paid between %0 and %4 based upon the original order, payments totaling $4,295.69 were received by the Division. This would leave an amount in arrears at that point of $7,704.31.[6]

At the June 7, 1994, hearing, the court determined Raymond to be emancipated as of April 10, 1993. According to the payment record, the amount Pettaway paid in total child support from April 1993 through May 1994 was $1,748.75. However, according to the court's original order, the amount was to have been $3,850.[7] The revised amount ordered at the June 7, 1994, hearing, taking into account Raymond's emancipation, still would have ex-

---

5. An additional "Case Payment History" is contained in the legal file, but the payments reflected therein have no dates. It is dated at the top "9/28/ " and a hole is punched through the year on both pages. It reflects a total of $7,425.17, of which $2,918.84 was paid to arrears, and $4,506.33 was paid to "current."

6. While our calculations do not match those of the trial court, we do not have the benefit of knowing on what record the trial court based its total of $7,914.31.

7. Fourteen months times $250 in current support plus fourteen months times $25 toward the arrearage.

ceeded the amount Pettaway actually paid during that period.[8] Therefore, based on the record before us, he is not entitled to any offset of the arrearage due to payments made subsequent to Raymond's emancipation.

After the June 7, 1994, order, the records reflect Pettaway made seven more payments, totaling $377.42. The payment record ends on August 31, 1994. Since we have no documentation of any payments made subsequent to Renard's date of emancipation, March 26, 1995, we have no way of knowing what, if any, amounts were paid.

Based on the trial court's orders of May 2, 1990, and June 7, 1994, according to our calculations, Pettaway should have paid $11,375 in current ongoing child support and $1,650 toward the past due amount up to the date of Renard's emancipation on March 26, 1995. From the record before us, it appears Pettaway paid a total of either $4,295.69 or $7,425.17 during that period. Thus, giving Pettaway the benefit of the higher number, the record does not support the trial court's judgment that Pettaway had overpaid child support in the amount of $2,218.40.

From the foregoing, we can only conclude that the trial court's judgment that Mr. Pettaway overpaid his child support is not supported by substantial evidence. Accordingly, the judgment is reversed and the cause remanded to the trial court for further proceedings consistent with this opinion. If the court deems it advisable, it may permit presentation of additional evidence to ascertain the correct total of payments made by Mr. Pettaway.

All concur.

8. The correct amount would have been fourteen months times $150 = $2,100. (We note that in its June 7, 1994 order, the trial court increased the amount to be paid toward the arrearage from $25 per month to $50 per month. The totals calculated here only reflect the original $25 per month obligation.) The documentation indicates Pettaway actually paid $1,748.75.