**STATE of Missouri, Division of Child Support Enforcement; and Shelia J. Clark, Respondent,**

v.

**Ray A. PETTAWAY, Appellant Pro Se.**

**No. WD 59938.**

Missouri Court of Appeals, Western District.

April 23, 2002.

Motion for Rehearing and/or Transfer to Supreme Court Denied May 28, 2002.

Application for Transfer Denied Aug. 27, 2002.

---

2. http://www.law.upenn.edu/bll/ulc/fnact99/    ucla87.pdf.

Ray Pettaway, Arlington, TX, appellant, pro se.

Luanne F. Kurth, Kansas City, MO, for respondent.

Before ULRICH, P.J., BRECKENRIDGE and HARDWICK, JJ.

LISA WHITE HARDWICK, Judge.

Ray Pettaway appeals the trial court's judgment of child support arrearage after remand from this Court in *State v. Pettaway*, 22 S.W.3d 205 (Mo.App. W.D.2000). He asserts: 1) the trial court's judgment exceeded the scope of remand; 2) the trial court erred in excluding evidence of his credit history; and 3) the evidence was insufficient to support the court's judgment. We affirm.

## Factual and Procedural History

The relevant facts, as largely set forth in our prior opinion, *Pettaway*, 22 S.W.3d at 206, are as follows:

Pettaway is the natural father of Ray Clark, born April 10, 1975, and Renard Clark, born March 26, 1977. On May 2, 1990, the Jackson County Circuit Court ordered Pettaway to pay $250 per month in child support beginning June 15, 1990. The court further found Pettaway owed $5,403.20 in back child support, which had been paid to the natural mother (Mother) by the State in the form of public assistance. Pettaway was ordered to reimburse the State $25 per month beginning June 15, 1990, until this arrearage was paid in full.

On June 7, 1994, the court reduced Pettaway's child support obligation to $175 per month due to Ray's emancipation. The reduced payment included $125 in support for Renard and $50 toward the arrearage. The court noted Pettaway was then $7,914.31 in arrears and stated, "this order does not affect previous orders for support due, but not yet paid, which sums accrued prior to the dates the support obligations are terminated by virtue of this order."

On July 1, 1996, Pettaway moved for termination of child support for Renard, who turned age eighteen on March 26, 1995. He also requested that monthly payments he had made for both Ray and Renard, from the time of their eighteenth birthday until the time each of the emancipation orders were entered, be applied to his arrearage obligation. Following a hearing on August 12, 1996, the court declared Renard emancipated and ordered "any alleged payments upon arrearage in child support as of this date shall cease."

One year later, the Division of Child Support Enforcement (DCSE) moved to be added as a necessary party in the child support case and to set aside the order of August 12, 1996. DCSE claimed Pettaway owed $6,283.22 in "assigned support" and $5,403.20 in "State Debt." The trial court sustained DCSE's motion and set aside its prior order.

On January 7, 1999, Pettaway filed a motion seeking a refund of $2,218.40 based on his alleged overpayment of child support. The court sustained the refund motion, and DCSE appealed to this court. We reversed the trial court's refund judgment as unsupported by substantial evidence, finding that:

> Based on the trial court's orders of May 2, 1990, and June 7, 1994, according to our calculations, Pettaway should have paid $11,375 in current ongoing child support and $1,650 toward the past due amount up to the date of Renard's emancipation on March 26, 1995. From the record before us, it appears Pettaway paid a total of either $4,295.69 or $7,425.17 during that period. Thus, giving Pettaway the benefit of the higher number, the record does not support the trial court's judgment that Pettaway had overpaid child support in the amount of $2,218.40.

*Pettaway*, 22 S.W.3d at 208. We remanded the case for further proceedings, noting that "[i]f the court deems it advisable, it may permit presentation of additional evidence to ascertain the correct total of payments made by Mr. Pettaway." *Id.* The mandate was issued August 2, 2000, reversing and remanding for "further proceedings in conformity with the opinion."

Six months after the mandate was issued, DCSE filed a motion seeking determination of the amount of child support arrearage, an award of interest and costs, and for an amended payment schedule. Pettaway filed no response to the motion but requested rehearing on his refund motion. On March 7, 2001, the trial court

heard evidence on both motions and entered judgment against Pettaway for $5,681.88 in past due child support, $5,403.20 in state debt, $5,267.60 in interest, and $154.55 in costs. Pettaway appeals.

### Point I: Proper Scope of Remand

◼ Pettaway contends the trial court's judgment went beyond the scope of remand as the only issue before the appeals court was his claim for a refund of overpaid child support. He argues the "law of the case" doctrine prohibited the trial court from determining whether he owed an arrearage.

◼ The law of the case doctrine is well established in Missouri. *Student Loan Mktg. Ass'n v. Raja*, 914 S.W.2d 825, 829 (Mo.App. W.D.1996). Pursuant to this doctrine, prior decisions of the appellate court become the law of the case in any subsequent proceedings, and the trial court is without power to modify, alter, amend, or otherwise depart from those decisions. *Id.* In reviewing the actions of the trial court on remand, we look to the mandate in conjunction with the results contemplated by the appellate opinion. *Tillis v. City of Branson*, 975 S.W.2d 949, 951 (Mo.App. S.D.1998). The opinion is therefore construed as part of the mandate and must be used to interpret the mandate. *Raja*, 914 S.W.2d at 829.

Pettaway's original appeal arose in the context of a child support case, wherein he motioned the court for a refund based on an alleged overpayment. The trial court granted the refund and DCSE appealed. We reversed the judgment, finding no evidence that Pettaway overpaid his child support and thereby concluding he was not entitled to a refund. We remanded the case for further proceedings, noting that the trial court could "permit presentation of additional evidence to ascertain the correct amount of payments by Mr. Pettaway." The mandate, issued August 2, 2000, reversed and remanded the cause to the trial court "for further proceedings in the conformity with the opinion."

◼ Our mandate was a general mandate which allowed the trial court to "exercise" "discretion on the mechanics" of the case on remand. *Raja*, 914 S.W.2d at 829. We gave no specific instructions to enter a particular judgment; thus, the trial court had authority to hold hearings in its discretion and make rulings on unresolved issues in the case. See *Noll v. Shelter Ins. Companies*, 774 S.W.2d 147, 150 (Mo.banc 1989).

The effect of our appellate reversal was to vacate the refund judgment and leave Pettaway's refund motion pending. Neither party requested rehearing on the motion immediately following the issuance of the mandate, and the trial court did not exercise discretion to hear additional evidence *sua sponte*.

On February 6, 2001, six months after the mandate was issued, DCSE filed a Motion to Establish Arrearage and for Amended Payment Schedule. Pettaway filed no response to the motion but requested rehearing on the issues raised in his motion for refund.

On March ·7, 2001, the trial court held a hearing on all issues raised in the two pending motions. Based on the evidence presented, the court determined Pettaway did not overpay his child support obligation and, in fact, owed a child support arrearage and state debt in the total amount of $11,085.08. Pettaway was ordered to pay that amount, plus statutory interest of $5,267.60, and costs of $154.55, for a total judgment of $16,507.23.

We find no error in the trial court's judgment for two reasons. First, our general mandate authorized the trial court, on

remand, to conduct hearings and issue rulings relative to the "correct total of payments" by Pettaway. *Pettaway*, 22 S.W.3d at 208. The trial court was not limited to determining whether Pettaway was owed a refund and could reasonably conclude that Pettaway owed child support. Upon such finding, the court was entitled to enter orders affirming Pettaway's legal obligation for such support. Thus, the judgment did not exceed the scope of our general mandate on remand.

Second, the trial court was authorized to enter the judgment based on DCSE's Motion to Establish Arrearage and for Amended Payment Schedule. Pettaway did not request rehearing on his refund motion until DCSE's Motion had been filed with the trial court. Both motions were heard together and the court's subsequent judgment resolved all issues raised. Regardless of the scope of remand, the court had jurisdiction to order payment of the arrearage, interest and costs, as requested in DCSE's motion. Point I is denied.

### Point II: Admissibility of Evidence

■ Pettaway contends the trial court erred in refusing to admit a 1997 credit report which listed his child support obligation as a debt owed. DCSE objected to the proffered evidence on relevancy grounds. The trial court sustained the objection, excluding the credit report from evidence.

■ Trial courts have considerable discretion in determining whether evidence should be admitted or excluded. *Thornton v. Gray Auto. Parts Co.*, 62 S.W.3d 575, 583 (Mo.App. W.D.2001). We can reverse the trial court only when the exclusion is an abuse of discretion so arbitrary or unreasonable as to shock the sense of justice or is indicative of an absence of careful consideration. *Id.* Even when this threshold is met, we will not reverse unless the error had a material effect upon the merits of the action. *Id.*

■ "To preserve the issue of exclusion of evidence for appeal, an offer of proof must be made at trial demonstrating why the evidence is relevant and admissible." *Evans v. Wal–Mart Stores, Inc.*, 976 S.W.2d 582, 584 (Mo.App. E.D.1998). In response to DCSE's objection to the credit report at trial, Pettaway stated, "Well, it's relevant because I had a court order saying I didn't owe anything, so I feel that it's relevant when you overlook a court order. I'm saying that's why it's relevant because I didn't owe them that." This statement did not constitute an offer of proof and failed to show the relevancy of the 1997 credit report to the primary issue of whether Pettaway owed child support at the time of the March 7, 2001 hearing. The admissibility of the credit report, therefore, was not preserved for appellate review.

■ Even if the evidentiary issue had been preserved for review, Pettaway fails to show on appeal the relevancy of the credit report. Evidence is logically relevant if it tends to prove or disprove a fact in issue or corroborate other evidence. *Benedict v. N. Pipeline Constr.*, 44 S.W.3d 410, 422 (Mo.App. W.D.2001). As noted, the appearance of Pettaway's child support debt on his 1997 credit report would not assist him in proving that he was owed a refund (or did not owe an arrearage) in 2001. The trial court did not err in excluding the credit report because it was not relevant to any material issue in the pending motions. Point II is denied.

### Point III: Sufficiency of the Evidence

■ In a court-tried case, the judgment will be sustained "unless there is no substantial evidence to support it, unless it is against the weight of the evidence, un-

less it erroneously declares the law, or unless it erroneously applies the law." *Murphy v. Carron,* 536 S.W.2d 30, 32 (Mo. banc 1976). "[D]eference will be given to the trial court's determination of credibility, viewing the evidence and inferences therefrom in the light most favorable to the decree and disregarding all contrary evidence and inferences.... [A] trial court is free to believe or disbelieve all, part, or none of the testimony of any witness." *State ex rel. Langiano v. Langiano,* 3 S.W.3d 886, 889 (Mo.App. S.D.1999).

In Point III, Pettaway asserts the judgment of arrearage was not supported by sufficient evidence because he presented "credible evidence" to show: 1) he was not credited for payments made through the State of Washington; and 2) the State of Missouri had previously told Pettaway he was not in arrears. Although he raised both issues in his Point Relied On, Pettaway abandoned the second issue by failing to address it in the argument section of his brief. *Faith Baptist Church of Berkeley, Inc., v. Heffner,* 956 S.W.2d 425, 426 (Mo. App. E.D.1997). We, therefore, address only the first issue regarding evidence of payments made in the State of Washington.

The trial court heard testimony that Pettaway's child support payments were collected by both the Court Administrator for Jackson County, Missouri and the State of Washington, during periods when he lived in that state. The court received into evidence the State's Exhibit 1, a certified history of Pettaway's payments to Jackson County and the State of Washington.

Using data from this payment history, the State's witness computed a "support calculation worksheet" referred to as form CSE 509. The form listed the amount of child support due for each month over the history of the case and the amount of child support paid each month. The CSE 509 was offered into evidence by the State and received without objection.

In computing the CSE 509, the State's witness testified she checked both the State of Washington and Jackson County pay history records. Because the pay history from State of Washington showed a higher total amount of payments than the Jackson County records, the State's witness "gave [Pettaway] the benefit of the doubt by giving him the higher figure used ..." The monthly totals on the CSE 509 reflect that Pettaway incurred a child support obligation of $13,250 over the history of the case. The form also indicates the total amount of his child support payments, including the greater amounts shown in the Washington records, was $7,568.12. That figure is the amount the trial court found Pettaway had paid in child support.

Pettaway contends he should be credited for an additional payment of $8,231.66 that was reflected on Exhibit 1, the certified payment history with a date of "09–05–96." The State disputed whether this amount was actually a payment by Pettaway. The State presented testimony that it was actually a bookkeeping entry made to "zero out" the account based on the trial court's order of August 12, 1996, which erroneously held that Pettaway had no arrearage. Since that order was subsequently set aside, the State argued the credit entry should be disregarded and, in any event, does not reflect a payment by Pettaway.

Contrary to the State's explanation for the amount credited to his account in 1996, Pettaway testified at trial that he made an "$8,000 plus" child support payment in 1996. He gave conflicting explanations for the source of this payment, testifying at first that he used proceeds from the sale of his house and testifying later that the

$8,231.66 amount was intercepted by DCSE from his income tax refund.

There was substantial evidence before the trial court for the determination that Pettaway paid a total of $7,568.12 in child support and had an arrearage due of $5,681.88. The certified pay history forms and the State's CSE 509 contained sufficient data to support the court's finding. The trial court was free to disbelieve Pettaway's contradictory testimony asserting that he paid an additional $8,231.66 in child support. *Langiano,* 3 S.W.3d at 889. Because the trial court's judgment was supported by substantial evidence, Point III is denied.

The judgment of the trial court is affirmed.

All concur.