Sandra L. LOMBARDO, Appellant–Respondent,

v.

Richard J. LOMBARDO, Respondent–Appellant.

Nos. WD 61572, WD 61623.

Missouri Court of Appeals,
Western District.

Oct. 28, 2003.

Motion for Rehearing and Transfer to Supreme Court Denied Nov. 25, 2003.

234

Kenneth C. Hensley, Raymore, MO, for appellant-respondent.

Gerard D. Eftink, Raymore, MO, for respondent-appellant.

Before: LOWENSTEIN, P.J., and SMART and EDWIN H. SMITH, JJ.

EDWIN H. SMITH, Judge.

Sandra L. DeHaan, f.k.a. Sandra L. Lombardo, appeals, and Richard Lombardo (respondent), her ex-husband, cross-appeals from the May 24, 2002 judgment of the Circuit Court of Cass County modifying its judgment on remand, in which the court had ordered, in accordance with § 452.335,[1] that the respondent pay to the appellant "as non-modifiable rehabilitative spousal maintenance the sum of Four Thousand Dollars ($4,000.00) per month for a period of 120 consecutive months ... to terminate upon the death of either party or the remarriage of the [appellant]." Despite the trial court's denomination of its maintenance award in its judgment on remand as being "non-modifiable," the court, in its May 24, 2002 judgment of modification, finding that it "intended that the maintenance awarded [the appellant] be modifiable" and based on a change of circumstances that the appellant was then cohabiting with an ex-spouse, ordered that the respondent's maintenance obligation be modified from $4000 to $2000 per month, commencing on February 11, 2002.

In her sole point on appeal, the appellant claims that the trial court erred in modifying its maintenance award, under § 452.370.1, because the award was denominated in the court's judgment on remand as being "non-modifiable." The respondent raises two points on cross-appeal. In Point I, he claims that the trial court erred in denying his motion to modify his maintenance obligation based on a change

of circumstances that the appellant had remarried because the weight of the evidence demonstrated that the appellant had entered into a common law marriage created in and under the law of the State of Texas, which marriage is recognized by the State of Missouri. In Point II, he claims that the trial court erred:

> in not issuing a sanction against [the appellant] that would have eliminated maintenance in that [she] committed a fraud on the court by lying about her rekindling her relationship with [her ex-husband] approximately 10 years before she filed for divorce and plotting to file for divorce because the court could never have awarded her $4,000 a month in maintenance if the truth had been told.

We dismiss the appellant's appeal for a lack of jurisdiction and affirm as to the respondent's cross-appeal, dismissing his points relied on for non-compliance with Rule 84.04(d) and (i).[2]

### Facts

In an amended judgment of January 20, 1998, the Circuit Court of Cass County, Missouri, dissolved the marriage of the parties. In the judgment, the court ordered, *inter alia*, the respondent to pay the appellant as "non-modifiable rehabilitative spousal maintenance the sum of Four Thousand Dollars ($4,000.00) per month for a period of 120 consecutive months commencing at the date of the closing of the sale of the family residence located at 705 Sandpiper, Raymore, Cass County, Missouri." The trial court further ordered that the maintenance award was terminable "upon the death of either party, the remarriage of the [appellant], or the cohabitation of [the appellant] with a person

---

1. All statutory references are to RSMo, 2000, unless otherwise indicated.

2. All rule references are to the Missouri Rules of Civil Procedure, 2003, unless otherwise indicated.

of the opposite sex to whom she is not related by blood or marriage for a period of 30 consecutive days."

The appellant appealed to this court, challenging, *inter alia*, the provision in the trial court's amended judgment terminating her maintenance award for cohabitation. In *Lombardo v. Lombardo (Lombardo I)*, 992 S.W.2d 919 (Mo.App.1999), this court reversed the judgment with respect to the automatic-termination-for-cohabitation language. In this court's opinion reversing and remanding the case, we stated that we were doing so "for the sole purpose of eliminating the portion of the decree relating to cohabitation of the [appellant], but the remaining portion of the judgment is affirmed and is to remain intact." *Lombardo*, 992 S.W.2d at 924.

On remand, the trial court, on December 1, 2000, entered its "Dissolution Judgment Entry nunc pro tunc" deleting from its mandate the automatic-termination-for-cohabitation language, but leaving the supporting finding. On March 22, 2001, the respondent filed a motion to modify the maintenance award of the trial court's amended judgment of January 20, 1998, alleging several grounds for modification, including cohabitation and common-law remarriage. In that regard, the respondent alleged that the appellant was cohabiting with her ex-husband, Lynn DeHaan, in the State of Texas, as husband and wife.

On July 27, 2001, the respondent filed a Rule 74.06(b) motion to vacate the judgment on remand of December 1, 2000, alleging, *inter alia*, mistake, inadvertence, surprise, excusable neglect, fraud, misrepresentation, and misconduct, and that the judgment was void, the prior judgment on which it relied had been reversed, and that "it [was] no longer equitable the subject Judgment remain in effect." The respondent also alleged that he was not aware of the judgment on remand until July 11, 2001.

On October 9, 2001, the trial court entered its second "Dissolution Judgment Entry nunc pro tunc," to correct the December 1, 2000 judgment, by deleting the automatic-termination-for-cohabitation language from the trial court's findings. As in the December 1, 2000 judgment on remand, the trial court denominated its maintenance award as being non-modifiable. Thereafter, on October 15, 2001, the respondent filed a second Rule 74.06(b) motion to vacate the October 9, 2001 *nunc pro tunc* judgment. And, on December 7, 2001, the respondent filed his "First Amended Motion to Modify Maintenance," alleging the same grounds for modification, but including an additional ground, which he denominated "change of circumstances."

The respondent's amended motion to modify was taken up and heard on February 11, 2002. At the hearing, the appellant challenged the trial court's jurisdiction to modify its maintenance award in that it had been denominated as being non-modifiable. On May 24, 2001, the trial court entered its "Judgment Modification," expressly denying the motion on the basis of common-law remarriage, but granting it as to cohabitation and ordering the respondent's maintenance obligation to be reduced to $2000 per month, beginning February 11, 2002.

This appeal followed.

### Standard of Review

In reviewing the trial court's decision in an action to modify or terminate a maintenance award, we review in accordance with *Murphy v. Carron*, 536 S.W.2d 30 (Mo. *banc* 1976), and will uphold the court's judgment unless it is not supported by substantial evidence, is against the weight of the evidence, or erroneously de-

clares or applies the law. *Adams v. Adams,* 51 S.W.3d 541, 546 (Mo.App.2001). In our review, we are to view the evidence in a light favorable to the judgment, "disregarding evidence to the contrary and deferring to the trial court even if the evidence could support a different conclusion." *Allen v. Allen,* 927 S.W.2d 881, 885 (Mo.App.1996). Assuming the trial court's award is supported by the record and applicable law, the court has broad discretion in modifying its award of maintenance; however, that discretion is not unfettered. *Bybee v. Bybee,* 879 S.W.2d 793, 795 (Mo. App.1994). We will reverse the award where there is an abuse of discretion. *Brooks v. Brooks,* 957 S.W.2d 783, 786 (Mo.App.1997). An abuse of discretion will be found where the award shocks the court's sense of justice. *Thomas v. Thomas,* 76 S.W.3d 295, 300 (Mo.App.2002).

### *Appellant's Appeal*
### I.

■ The appellant claims that the trial court erroneously declared and applied the law in modifying the maintenance award of its judgment on remand, reducing the respondent's maintenance obligation to her from $4000 per month to $2000 per month, effective February 11, 2002, because the award was denominated in the court's judgment as being "non-modifiable." We agree.

Section 452.335.1 authorizes an award of maintenance to either spouse in a proceeding for dissolution of marriage. Section 452.335.3 provides that every maintenance order shall state whether it is "modifiable or nonmodifiable." Section 452.335.3 further provides that: "Unless the maintenance order which includes a termination date is non-modifiable, the court may order the maintenance decreased, increased, terminated, extended, or otherwise modified based upon a substantial and continu-

ing change of circumstances which occurred prior to the termination date of the original order." Thus, a maintenance award that is denominated in a dissolution decree as being "non-modifiable" is not subject to modification under § 452.370.1, which provides, in pertinent part, that an award of maintenance "may be modified only upon a showing of changed circumstances so substantial and continuing as to make the terms unreasonable." Section 452.370.3 provides that: "Unless otherwise agreed in writing or expressly provided in the judgment, the obligation to pay future statutory maintenance is terminated upon the death of either party or the remarriage of the party receiving maintenance."

In its amended dissolution judgment of January 20, 1998, the trial court awarded the appellant "non-modifiable" maintenance, ordering that:

> the Respondent shall pay to the [appellant] as *non-modifiable* rehabilitative spousal maintenance the sum of Four Thousand Dollars ($4,000.00) per month for a period of 120 consecutive months commencing at the date of the closing of the sale of the family residence located at 705 Sandpiper, Raymore, Cass County, Missouri.
>
> IT IS FURTHER ORDERED, ADJUDGED AND DECREED that said spousal maintenance shall terminate upon the death of either party, the remarriage of the [appellant], or the *cohabitation of [the appellant] with a person of the opposite sex to whom she is not related by blood or marriage for a period of 30 consecutive days.*

(Emphasis added). The appellant appealed, *inter alia,* in *Lombardo I,* the trial court's maintenance award. 992 S.W.2d at 921–24. We reversed the trial court's judgment automatically terminating its maintenance award for the appellant's cohabitation for thirty consecutive days. *Id.*

Accordingly, this court, in its opinion, ordered that the trial court's judgment awarding maintenance terminable upon cohabitation for thirty consecutive days be reversed and the case remanded to the trial court "for the sole purpose of eliminating the portion of the decree relating to cohabitation of the [appellant], but the remaining portion of the judgment is affirmed and is to remain in tact." *Id.* at 924. And, in its mandate of June 17, 1999, the court ordered that the "judgment is affirmed in part and reversed in part, and the cause is remanded to the Circuit Court of Cass County for further proceedings in accordance with the Opinion of this Court."

■ On December 1, 2000, after almost eighteen months had elapsed from the time of this court's mandate and remand in *Lombardo I,* the trial court entered what it denominated "Dissolution Judgment nunc pro tunc," eliminating from its orders, as directed by this court, the language automatically terminating the respondent's maintenance obligation for cohabitation. However, for some unexplained reason, the language in the trial court's findings concerning the maintenance award being terminable upon cohabitation for thirty consecutive days was not eliminated. That "finding" reads: "The Court finds that said spousal maintenance will terminate upon ... the co-habitation of [the appellant] with a person of the opposite sex to whom she is not related by blood or marriage for a period of 30 consecutive days." [3] This conflict in the judgment on remand, however, did not affect the force of the trial court's judgment in that a conflict between the court's findings and its orders is to be resolved in favor of the court's orders. *Harris v. Desisto,* 932 S.W.2d 435, 442–43 (Mo.App.1996); *Spence v. Spence,* 922 S.W.2d 442, 442–43 (Mo.App.1996).

■ Although the trial court denominated its judgment of December 1, 2000, as a judgment *nunc pro tunc,* it clearly was not. The common law order of *nunc pro tunc* is now codified in Rule 74.06(a). *Higher Educ. Assistance Found. v. Hensley,* 841 S.W.2d 660, 662 (Mo.1992). Rule 74.06(a) reads, in pertinent part: "Clerical mistakes in judgments, orders or other parts of the record and errors therein arising from oversight or omission may be corrected by the court at any time of its own initiative or on the motion of any party and after such notice, if any, as the court orders." The judgment in question was obviously not entered to correct a clerical mistake of oversight or omission. Rather, it was entered, albeit belatedly,[4] in compliance with the mandate of this court in *Lombardo I.* Having reversed the trial court's amended judgment of January 20, 1998, in *Lombardo I,* that judgment ceased to exist such that its judgment of December 1, 2000, despite its being erroneously denominated a judgment *nunc pro tunc,* became the judgment of the trial court and would have been final thirty days thereafter, unless a "timely authorized after-trial motion [was] filed." Rule 81.05(a)(1). The record indicates that no timely authorized after-trial motions were filed, such that the trial court's judgment on remand of December 1, 2000, became final on January 2, 2001, although the thirtieth day fell on

---

3. We seriously question that this was, in fact, a finding inasmuch as it does nothing more than reiterate what the trial court ordered in its judgment with respect to the termination of maintenance upon the cohabitation of the appellant.

4. Trial courts and counsel should use their best efforts in insuring that the mandates of the appellate courts are followed as soon as practical. However, undue delays in doing so, such as here, generally do not affect the validity of the mandate. Frost v. Liberty Mut. Ins. Co., 813 S.W.2d 302, 305 (Mo. *banc* 1991).

Sunday, December 31, 2000. If the last day of the prescribed time period allowed by rule or statute falls on a Saturday, Sunday or legal holiday, as was the case here, the period runs until the end of the next day, which is neither a Saturday, Sunday or legal holiday. Rule 44.01(a).

■ On October 9, 2001, the trial court entered a second "Dissolution Judgment Entry nunc pro tunc." The purpose of that judgment was to correct the apparent clerical oversight in the December 1, 2000 judgment on remand, which, as we noted, *supra*, failed to delete the trial court's "finding" concerning cohabitation. The *nunc pro tunc* judgment of October 9, 2001, was not a new judgment, but related back to the December 1, 2000 judgment on remand and did not change the finality of that judgment. *Pirtle v. Cook*, 956 S.W.2d 235, 241 (Mo. *banc* 1997).

As noted, *supra*, in its judgment on remand of December 1, 2000, the trial court, in keeping with the mandate and opinion of this court in *Lombardo I*, "eliminated" or deleted the language from its orders found in its January 20, 1998 amended judgment, which language was intended to automatically terminate the court's maintenance award upon the cohabitation of appellant for thirty consecutive days. Although deleting the automatic-termination-cohabitation language, in keeping with its amended judgment of January 20, 1998, the trial court continued to denominate its award of maintenance as "non-modifiable," terminable upon the death of either party or remarriage of the appellant, as provided in

§ 452.370.3. In that regard, the judgment of December 1, 2000, reads:

[t]he Respondent shall pay to the [appellant] as *non-modifiable* rehabilitative spousal maintenance the sum of Four Thousand Dollars ($4,000.00) per month for a period of 120 consecutive months commencing at the date of the closing of the sale of the family residence located at 705 Sandpiper, Raymore, Cass County, Missouri.

IT IS FURTHER ORDERED, ADJUDGED AND DECREED that said spousal maintenance shall terminate upon the death of either party or remarriage of the [appellant].

(Emphasis added).

On March 22, 2001, the respondent filed a motion to modify his maintenance obligation, as provided in § 452.370.1. In his motion, the respondent sought to modify his maintenance obligation, terminating or reducing it, due to: (1) "common law marriage"; (2) "common law marriage—estoppel"; (3) "cohabitation"; and (4) "fraud on the court." Curiously, the respondent's motion sought to modify the trial court's amended judgment of January 20, 1998, even though at the time of the motion, the court had already entered its judgment on remand, dated December 1, 2000. The reason for the respondent's seeking to modify the non-existent January 20, 1998 judgment, rather than the December 1, 2000 judgment, became apparent when on July 27, 2001, he filed a motion, pursuant to Rule 74.06(b),[5] seeking to vacate or

---

5. Rule 74.06(b) reads, in pertinent part:

Excusable Neglect—Fraud—Irregular, Void, or Satisfied Judgment. On motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment or order for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; (2) fraud (whether heretofore denominated intrinsic

or extrinsic), misrepresentation, or other misconduct of an adverse party; (3) the judgment is irregular; (4) the judgment is void; or (5) the judgment has been satisfied, released or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable and the judgment remain in force.

modify [6] that judgment or in the alternative, "to interpret it to conform to Court of Appeals' decision." In his suggestions in support of his motion to vacate, the respondent asserted that he was not aware of the December 1, 2000 judgment until July 11, 2001, "when his attorney reviewed the court file." Whether true or not, the determination of which is not necessary to our analysis, it would appear from the respondent's perspective that it was this event that prompted his motion of July 27, 2001. In his motion to vacate the December 1, 2000 judgment, the respondent alleged that it was in contravention of this court's mandate in *Lombardo I* and the law of that case found in the court's opinion in that, although we ordered the removal of the automatic-termination-for-cohabitation language from the judgment, we indicated that the court's award of maintenance could be modified subsequently for cohabitation, as long as the procedures of § 452.370.1, governing modifications, were followed. The record indicates that the respondent's motion to vacate of July 27, 2001, was never ruled upon.

■ On October 15, 2001, the respondent filed a second Rule 74.06(b) motion to vacate, seeking to vacate the October 9, 2001, *nunc pro tunc* judgment, rather than the judgment of December 1, 2000. That motion also was never ruled upon. In his second motion to vacate, the respondent asserts that there was a "meeting" on August 23, 2001, between the attorneys and the trial court, at which the December 1, 2000 judgment was discussed. The respondent alleged that at that meeting, the trial court said that:

in the original Judgment his intention was that if [the appellant] cohabited with

Lynn DeHaan for more than 30 days he would cut off maintenance and that 30 days of cohabitation would be enough for him to cut it off. [The court] indicated at that time that he read the Court of Appeals decision to mean that he can still terminate cohabitation if he follows the guidelines as set out in the Court of Appeals decision. [The court] said that while he was sure he could terminate the maintenance for cohabitation, he wasn't sure about the question of whether he could modify the payments downward but indicated that he probably could modify maintenance downward unless someone convinced him that he did not have the power to do so. The [court] made it clear that the only reason he wanted to delete the reference in the original Judgment to terminating for 30 days cohabitation was because the Court of Appeals told him to delete that sentence. The [court] said we could still pursue the motion to modify maintenance and he thought he could still terminate maintenance thereafter for cohabitation.

There is no record of this alleged meeting, and, of course, allegations in a motion are not self-proving, *Schindler v. McCluskey*, 58 S.W.3d 48, 50 (Mo.App.2001), such that the alleged meeting and discussion with the trial court do not offer any support for the respondent's assertion on appeal that the court did not intend for his maintenance award to be non-modifiable. The respondent further alleged in his second motion that:

Now, the [court] has entered a Nunc Pro Tunc drafted by Petitioner's attorney, which has some unfortunate language. That unfortunate language

6. Although the motion speaks in terms of vacating and *modifying* the trial court's judgment, pursuant to Rule 74.06(b), the rule makes no provision for modification. *Settles*

*v. Settles*, 913 S.W.2d 101, 103 (Mo.App. 1995). If the rule applies, the judgment is vacated. *Id.*

could possibly be interpreted by someone who was not in that meeting as meaning that the maintenance is non-modifiable. That would be a substantive change in the original Judgment. A substantive change cannot be made in a Judgment by Nunc Pro Tunc.

Obviously, the "unfortunate language" to which the respondent is alluding is the express language of the judgment on remand that the trial court's award of maintenance to the appellant was "non-modifiable."

On December 7, 2001, the respondent filed his "First Amended Motion to Modify Maintenance." In his amended motion, the respondent sought to modify the trial court's maintenance award, terminating or reducing it on the same grounds alleged in his initial motion of March 22, 2001, except for adding the additional ground of "changed circumstances," under § 452.370.1, specifically the sharing of "various living expenses" by the appellant while cohabiting with her ex-husband, Lynn DeHaan. The respondent's first amended motion to modify was taken up and heard on February 11, 2002. On May 24, 2002, the trial court entered its "Judgment Modification," specifically denying the respondent's amended motion to modify on the basis of appellant's having entered into a common law marriage in Texas with her ex-husband, Lynn DeHaan, but granting it and ordering a reduction in maintenance from $4000 per month to $2000 month, starting February 11, 2002, based on its finding that:

> [d]ue to the living arrangements of [the appellant] which occurred subsequent to the Dissolution of the marriage of Sandra Lombardo and Richard Lombardo, there has been a substantial and continuing change in the circumstances of Petitioner which renders the previous maintenance Judgment unreasonable in

view of her reduced need for support from Respondent.

There can be no dispute from the record that the trial court's judgment on remand of December 1, 2000, denominating its maintenance award as "non-modifiable," was never appealed and that the trial court never granted the respondent any relief from that judgment pursuant to his Rule 74.06(b) motions, which were never ruled upon. And, there can be no dispute that in his cross-appeal, the respondent does not raise any issue with respect to the trial court's failure to modify its judgment to denominate its maintenance award as being modifiable. Rather, the respondent raised the issue only in defense of the appellant's sole point on appeal, that the trial court was precluded from modifying its maintenance award under § 452.370.1 due to the court's denomination of the award, in its December 1, 2000 judgment on remand and the October 9, 2001 *nunc pro tunc* judgment, as being non-modifiable.

The respondent does not dispute the fact that the trial court cannot modify a maintenance award, pursuant to § 452.370.1, that has been denominated in the judgment as being "non-modifiable." However, he contends that the trial court's denomination of its award in its judgment on remand as being "non-modifiable" is not controlling in that the judgment is in conflict with this court's mandate and opinion in *Lombardo I* and was not the judgment intended by the trial court. He also asserts that such a denomination was not supported by the record. Thus, as framed by the parties, the issue in this point is whether the trial court's maintenance award in its judgment on remand was modifiable, despite the court's denomination of the maintenance award as being non-modifiable.

■ The mandate of the appellate court is not its judgment. *Moore v. Beck,* 730 S.W.2d 538, 540 (Mo. *banc* 1987). The appellate court's opinion is its judgment, which is communicated to the lower court by its mandate. *Id.* In other words, the mandate "constitutes the official communication of the appellate judgment to the subordinate court." *Id.* (citation omitted). "When the terms of mandate remand the cause to the subordinate tribunal, the effect is to revest jurisdiction in that court to take the acts directed." *Id.* at 540–41 (citation omitted).

■ "It is well settled that a trial court, on remand, with respect to the issues addressed by the appellate court on appeal, only has that authority granted to it by the appellate court in its mandate." *City of Excelsior Springs v. Elms Redevelopment Corp.,* 18 S.W.3d 61, 64 (Mo.App. 2000) (*quoting Sumnicht by Sumnicht v. Sackman,* 968 S.W.2d 171, 174 (Mo.App. 1998)). In determining its authority on remand, the trial court is not only to be guided by the mandate, but the judgment or opinion of the appellate court. *Associated Indus. of Mo. v. Dir. of Revenue,* 918 S.W.2d 780, 782 (Mo. *banc* 1996); *Moore,* 730 S.W.2d at 541; *Ironite Products Co., Inc. v. Samuels,* 17 S.W.3d 566, 570–71 (Mo.App.2000); *Student Loan Mktg. Ass'n v. Raja,* 914 S.W.2d 825, 829 (Mo.App. 1996). Thus:

> [T]he mandate is not to be read and applied in a vacuum. The opinion is part of the mandate and must be used in interpreting the mandate. Accordingly, proceedings on remand should be in accordance with the mandate and the result contemplated in the appellate court's opinion. Furthermore, a general remand has the effect of a direction to proceed in accordance with the holdings entered by the opinion of the appellate court as the law of the case.

*Ironite,* 17 S.W.3d at 570–71 (citations omitted).

> When a point decided at the appellate level comes before a lower court on further proceedings in the same case, the lower court does not have the jurisdiction to overrule the appellate court. If the lower court disregards the law of the case, the issue is not simply whether that court is correct in its construction of the appellate decision, but rather whether the court is within its lawful jurisdiction.

*Student Loan Marketing Ass'n,* 914 S.W.2d at 829 (citation omitted).

> Any proceedings in the trial court contrary to the mandate are null and void. Conversely, a trial court also risks error in doing less than the mandate requires. By failing to address all of the issues returned to the trial court upon remand, there is a substantial danger that the resulting judgment will lack finality. Put another way, a trial court's failure to complete its obligation under a mandate may prevent it from exhausting its jurisdiction over the case.

*Edmison v. Clarke,* 61 S.W.3d 302, 310 (Mo.App.2001) (citation omitted).

As noted, *supra,* in this court's mandate in *Lombardo I,* we affirmed the trial court's amended judgment of January 20, 1998, in part and reversed in part, and ordered the "cause remanded to the Circuit Court of Cass County for further proceedings in accordance with the Opinion of this Court." Such language, read in isolation, has been interpreted as being a general remand, "as opposed to a remand importing a direction of specified things." *Associated Indus. of Mo.,* 918 S.W.2d at 782 (citation omitted). However, when our mandate is read in conjunction with our opinion in *Lombardo I,* it is clear that our remand was not a general remand. In that regard, as noted *supra,* in this court's

opinion in *Lombardo I*, we expressly ordered that the case be remanded to the trial court "for the sole purpose of eliminating the portion of the decree relating to cohabitation of the [appellant], but the remaining portion of the judgment is affirmed and is to remain intact." 992 S.W.2d at 924. Thus, our remand was not a simple remand, but a remand "importing a direction of specified things." *Associated Indus. of Mo.*, 918 S.W.2d at 782.

In holding that an award of maintenance could not be made automatically terminable upon cohabitation of a certain duration, as is the case for remarriage or death, pursuant to § 452.370.3, this court, in *Lombardo I*, touched on the fact that a § 452.370.1 modification of maintenance for cohabitation was not prohibited, provided there was sufficient proof establishing that the "cohabiting relationship had caused a substantial and continuing economic change of circumstances." 992 S.W.2d at 923. In other words, while cohabitation in and of itself is not sufficient to modify an award of maintenance under § 452.370.1, its effect on the economic circumstances of the parties could constitute such a change. The respondent seizes on this language in our opinion to argue that, despite the express language of this court's opinion restricting the trial court's authority on remand, this court intended by its mandate and opinion in *Lombardo I* for the trial court to have the authority to denominate, in its judgment on remand, its maintenance award as being "modifiable" so as to effectuate the trial court's intent to allow modification based on cohabitation. From this, he argues, in effect, that the trial court failed to comply with the directives of this court on remand in *Lombardo I* such that in entering its judgment on remand without denominating its maintenance award as being modifiable, the court did not exhaust its jurisdiction; and, hence, we should, *sua sponte*, cause the judgment on remand to be amended to denominate the court's maintenance award as being modifiable.

■■■ In interpreting a judgment, we are to read it in its entirety. *Morgan Publ'ns, Inc. v. Squire Publishers, Inc.*, 26 S.W.3d 164, 177 (Mo.App.2000). "The words and clauses used in a judgment are to be construed according to their natural and legal import." *Panettiere v. Panettiere*, 945 S.W.2d 533, 539 (Mo.App.1997). And, it is well settled that "when the language of the judgment is plain and unambiguous there is no room for construction or interpretation, and the effect thereof must be declared in the light of the literal meaning of the language used." *Gaunt v. State Farm Mut. Auto. Ins. Co.*, 24 S.W.3d 130, 138 (Mo.App.2000). In other words, where the language of the judgment is plain and unambiguous, we do not look outside the four corners of the judgment for its interpretation. *Howard v. Howard*, 916 S.W.2d 875, 876 (Mo.App.1996). This standard would, of course, apply not only to our interpretation of the trial court's judgment on remand, but to our opinion in *Lombardo I* inasmuch, as we noted, *supra*, our opinion is our judgment. *Moore*, 730 S.W.2d at 540.

■■■ The respondent's argument that there was a conflict between the trial court's judgment on remand and this court's mandate and opinion in *Lombardo I*, ignores the very clear and unambiguous language of our opinion that we were remanding the case to the trial court "for the sole purpose of eliminating the portion of the decree relating to cohabitation of the [appellant], but the remaining portion of the judgment is affirmed and is to remain intact." 992 S.W.2d at 924. This language was obviously directed at the provision in the trial court's amended judgment of January 20, 1998, the judgment that was ap-

pealed in *Lombardo I,* ordering that "said spousal maintenance shall terminate upon ... the co-habitation of [the appellant] with a person of the opposite sex to whom she is not related by blood or marriage for a period of 30 consecutive days." Thus, in affirming the "remaining portion of the judgment," it was clear that this court was affirming, *inter alia,* that portion of the court's judgment denominating its award of maintenance as being "non-modifiable." And, it should be noted that we did not just affirm the non-offending portion of the judgment, we specifically directed that it was "to remain intact." In light of this fact, and the fact that "sole" is defined in WEBSTER'S NEW WORLD COLLEGE DICTIONARY 1276 (3rd ed.1997), as "exclusive," we fail to see how we could reasonably find on appeal, as the respondent urges, that pursuant to our mandate and opinion, the trial court had the authority to change its award of maintenance from non-modifiable to modifiable.

There is nothing in our opinion in *Lombardo I* that conflicts with the very specific and express restrictive language governing the trial court's jurisdiction on remand, including this court's discussion concerning modification under § 452.370.1 for a substantial and continuing change of financial circumstances predicated on cohabitation. In fact, the issue of modifiability of the maintenance award, under § 452.370.1, was not even before the court in *Lombardo I.* Further proof of the clarity of this court's directions on remand can be found in the fact that despite what the trial court may have allegedly intended with respect to modification of its maintenance award, the record indicates that it read this court's opinion exactly as we do here. When reading our judgment or opinion in *Lombardo I* as a whole and giving the language used its plain and ordinary meaning, there can be no doubt as to the fact that we were restricting the trial court's

jurisdiction on remand to entering a judgment identical to its amended judgment of January 20, 1998, except for the deleting of the automatic-termination-for-cohabitation language of the judgment.

If, in fact, the respondent believed that the trial court's judgment on remand was in conflict with this court's mandate and opinion in *Lombardo I,* his recourse was to have appealed the judgment or sought relief from it pursuant to Rule 74.06(b). He is not allowed to collaterally attack the judgment awarding maintenance, based on a mere allegation that the trial court intended a different result or that its award was not supported by the evidence or the law. *Gaunt,* 24 S.W.3d at 139. From the record, it is clear that no appeal was ever taken from the judgment on remand. From the record, it is also clear that the respondent never pursued his Rule 74.06(b) motions to a ruling, nor does he raise any claim in his cross-appeal concerning that issue. Rather, he appears to have been content to rely on an alleged off-the-record assurance of the trial court that despite the clear language of the court's judgment on remand that its maintenance award was "non-modifiable," the award was nonetheless subject to modification under § 452.370.1. In so doing, he ran an obvious risk that has now come home to roost.

■■■ Even if we were inclined to look at matters outside the four corners of the judgment to ascertain whether the trial court intended its award of maintenance to be "modifiable," under § 452.370.1, as the respondent suggests, the record refutes that fact. Giving the express language used in the trial court's amended judgment of January 20, 1998, its plain and ordinary meaning, there can be no dispute that the court intended its maintenance award to be non-modifiable and to continue

until death, remarriage, or cohabitation for thirty consecutive days. There simply is nothing in the record before us which we can consider as suggesting that the trial court, at the time it entered its amended judgment of January 20, 1998, the judgment which was appealed, intended for its maintenance award to be modifiable for any substantial and continuing change of circumstances affecting the parties' economic circumstances. Awards of non-modifiable decretal maintenance are permitted under § 452.335. *Czapla v. Czapla,* 94 S.W.3d 426, 428 (Mo.App.2003). And, while the respondent is correct that there is a judicial preference for modifiable decretal awards of maintenance of unlimited duration, *Lincoln v. Lincoln,* 16 S.W.3d 346, 347 (Mo.App.2000), and that non-modifiable awards must be justified by the facts and circumstances of the particular case, *Burnett v. Burnett,* 18 S.W.3d 27, 32 (Mo.App.2000), no attack was ever mounted by him prior to this appeal concerning that issue. *See Czapla,* 94 S.W.3d at 428–429 (holding that the law of case doctrine precluded the appellant from attacking in the second appeal the trial court's denomination of its maintenance award as being decretal).

In summary of this point, we find that the trial court's judgment on remand of December 1, 2000, as corrected by the judgment *nunc pro tunc* of October 9, 2001, expressly denominating its maintenance award to the appellant as being "non-modifiable," is a final judgment, binding on the parties and the trial court. As such, pursuant to § 452.335.3, the award was not subject to modification, as governed by § 452.370.1. Hence, the trial court's "Judgment of Modification" of May 24, 2002, purporting to modify the court's maintenance award in its judgment on remand of December 1, 2000, exceeded the court's continuing jurisdiction to modify such awards, as conferred by § 452.370.1,

and, therefore, was null and void, *Sumnicht,* 968 S.W.2d at 174, to the extent it was based on a change of circumstances, specifically, the financial implications of the appellant's cohabitation with her ex-husband, Lynn DeHaan.

The appellant's appeal is dismissed for a lack of jurisdiction.

Our disposition of the appellant's appeal does not end our inquiry. We must still address the claims the respondent raises on cross-appeal. This is so in that the judgment on remand expressly provides for termination of the respondent's maintenance obligation upon remarriage, in accordance with § 452.370.3, and he is contending in his cross-appeal that the trial court's denial of his motion to "modify or terminate" maintenance for the appellant's alleged common law marriage to her ex-husband, Lynn DeHaan, was against the weight of the evidence.

## Respondent's Cross–Appeal

### II.

In Point I of his cross-appeal, the respondent claims that the trial court erred in denying his motion to modify or terminate his maintenance obligation based on a change of circumstances, specifically that the appellant had remarried, because the weight of the evidence demonstrated that the appellant had entered into a common law marriage created in and under the law of the State of Texas, which is recognized by the State of Missouri.

In attempting to review the respondent's claim on the merits, we are immediately struck by the fact that his argument contains no page references to the legal file or the transcript, as required by Rule 84.04(i). With respect to the importance of this requirement, this court, in *McCormack v. Carmen Schell Constr. Co,* 97 S.W.3d 497, 509 (Mo.App.2002), stated:

[the requirement is] not only mandatory but also essential for the effective functioning of appellate courts. A party's mandated compliance with this Rule allows this court to verify the evidence upon which a party relies in support of its argument; without such compliance, this court would effectively act as an advocate of the non-complying party, which we cannot do. This court cannot ... spend time perus[ing] the record to determine if the statements are factually supportable.

Here, unless we were to do the work for the respondent, we have no way of knowing whether the facts he cites in his argument are supported by the record. Because the respondent has failed to comply with Rule 84.04(i), we decline review. *Weisenburger v. City of St. Joseph*, 51 S.W.3d 119, 125 (Mo.App.2001).

Point dismissed.

### III.

In Point II of his cross-appeal, the respondent claims that the:

court erred in not issuing a sanction against [the appellant] that would have eliminated maintenance in that [she] committed a fraud on the court by lying about her rekindling her relationship with [her ex-husband] approximately 10 years before she filed for divorce and plotting to file for divorce because the court could never have awarded her $4,000 a month in maintenance if the truth had been told.

The respondent's point fails to comply with Rule 84.04(d), governing proper points relied on.

Rule 84.04(d) provides, in pertinent part:

(1) Where the appellate court reviews the decision of a trial court, each point shall:

(A) identify the trial court ruling or action that the appellant challenges;

(B) state concisely the legal reasons for the appellant's claim of reversible error; and

(C) explain in summary fashion why, in the context of the case, those legal reasons support the claim of reversible error.

The point shall be in substantially the following form: "The trial court erred in [identify the challenged ruling or action], because [state the legal reasons for the claim of reversible error], in that [explain why the legal reasons, in the context of the case, support the claim of reversible error]."

Thus, the rule requires, *inter alia,* that a proper point relied on must: (1) identify the ruling or action of the trial court that is being challenged on appeal; (2) state the legal reason or reasons for the claim of reversible error; and (3) explain in summary fashion why, in the context of the case, the legal reason or reasons support the claim of reversible error. *State ex rel. Greene v. Greene*, 51 S.W.3d 537, 540 (Mo. App.2001). "The function of this rule is to give notice to the opposing party of the precise matters which must be contended with and to inform the court of the issues presented for review." *Wilkerson v. Prelutsky*, 943 S.W.2d 643, 647 (Mo. banc 1997).

The respondent's point relied on fails to state the legal reason or reasons for his claim of reversible error and explain in summary fashion why, in the context of the case, the legal reason or reasons support the claim of reversible error. His point is nothing more than an abstract statement of the law, which is unacceptable in satisfying the requirements of Rule 84.04(d).

In addition to failing to comply with Rule 84.04(d), the respondent's argument of his second point on cross-appeal suffers from the same deficiency as the argument as to his first point. The respondent's argument as to his second point contains no page references to the legal file or the transcript, as required by Rule 84.04(i). We refuse to become an advocate for the respondent by combing the record to determine if the facts he asserts in support of his claim are supported by the record.

■ Even if we were to review, *ex gratia*, the respondent's point would still fail. The record before us does not indicate that any sanction for fraud was ever sought by the respondent from the trial court, although he did allege fraud in his motion as an alternative ground for modifying the trial court's maintenance award. "An issue raised for the first time on appeal and not presented to or decided by the trial court is not preserved for appellate review." *Care & Treatment of Burgess v. State*, 72 S.W.3d 180, 184 (Mo.App. 2002).

Point dismissed.

### Conclusion

The appellant's appeal from the trial court's May 24, 2002 judgment, granting the respondent's motion to modify maintenance, pursuant to § 452.370.1, based on cohabitation by the appellant, is dismissed for a lack of appellate jurisdiction, the court's judgment of modification having been found to be null and void, *ab initio*, for a lack of jurisdiction, the effect of which is to restore its judgment on remand of December 1, 2000, as corrected by its judgment *nunc pro tunc* of October 9, 2001. The respondent's cross-appeal of the trial court's May 24, 2002 judgment, denying his motion to modify maintenance

for the appellant's common-law remarriage, is affirmed.

LOWENSTEIN, P.J., and SMART, J., concur.