**Bert BRIDGES, et al., Plaintiffs-Appellants,**

**v.**

**BORE-FLEX INDUSTRIES, INC., et al., Defendants-Respondents.**

**No. SD 34878**

Missouri Court of Appeals, Southern District, Division Two.

Filed: August 24, 2017

Motion for Rehearing and/or Transfer to Supreme Court Denied September 15, 2017

Application for Transfer to Supreme Court Denied September 15, 2017

Application for Transfer Denied November 21, 2017

Attorney for Appellants—Robert J. Bjerg of Overland Park, KS.

Attorneys for Respondent Bore-Flex—Jason C. Smith, Derek A. Ankrom of Springfield, MO.

Attorneys for Respondents Carnahan, Evans, Cantwell & Brown, P.C., John Carnahan, III, Frank Carnahan, and C. Bradford Cantwell—Michael J. Patton, Steven E. Ward, Valerie L. Dixon of Springfield, MO.

Attorneys for Respondents Hamilton, Morgan, Jungers, Morgan, and Jungers, Jr.—Bryan O. Wade, Laura A. Greene of Springfield, MO.

Attorney for Respondent Daniel Jungers—Eric D. Barton of Kansas City, MO.

Before Lynch, P.J., Rahmeyer, J., and Scott, J.

PER CURIAM.

Plaintiffs Bert Bridges ("Bridges") and James Massengale, Jr. ("Massengale") filed a nine-count petition ("the Petition") against Defendants Bore-Flex Industries, Inc. ("Bore-Flex"); Deborah M. Hamilton, personal representative of the Estate of Carl D. Jungers, Sr. ("Carl Jungers"), Michael R. Morgan, Carl D. Jungers, Jr. ("Doug Jungers"), Daniel Jungers, David Jungers, and Sharon Morgan (collectively,

"Individual Defendants"); and Carnahan, Evans, Cantwell & Brown, P.C., ("Carnahan Evans"), C. Bradford Cantwell ("Cantwell"), John M. Carnahan, III ("John Carnahan"), and Frank C. Carnahan ("Frank Carnahan") (collectively, "Attorney Defendants"). Defendants filed multiple motions for summary judgment, and the trial court entered judgments in favor of all Defendants on all counts in the Petition. The trial court also granted Bore-Flex's motion for a protective order and the return of certain documents claimed to be protected by the attorney-client privilege and work product doctrine. Plaintiffs timely appeal these judgments, raising four points. None of the points have merit. The judgment is affirmed.

Bore-Flex is a Missouri corporation. At all relevant times, Plaintiffs Bridges and Massengale and Defendants Carl Jungers, Michael Morgan, Daniel Jungers, David Jungers and Sharon Morgan were Class B nonvoting shareholders of Bore-Flex. Michael Morgan and Carl Jungers were also Class A voting shareholders and directors of Bore-Flex. Doug Jungers was elected to the board of directors of Bore-Flex on January 17, 2011. Attorney Defendants began representing Bore-Flex in July 2006.

On January 1, 2006, Bore-Flex (then known as Lifetime Lumber, Inc.) was recapitalized and restructured as part of a written agreement approved by its shareholders (the "Recapitalization Agreement"). As part of the Recapitalization Agreement, Bore-Flex executed five unsecured promissory notes ("Founder Loan Notes") in favor of Carl Jungers, Michael Morgan, Daniel Jungers, David Jungers, and Sharon Morgan (collectively, "Holders"), who had made previous "Founder Loans" to Bore-Flex. The outstanding bal-

ances in favor of the Holders (as of April 2006) were, respectively, $2,097,126.73; $1,201,105.30; $515,139.40; $542,066.00; and $49,367.94.

Following the execution of the Recapitalization Agreement, Bore-Flex never sold, and thus never profited from, Permitted Lumber Product.[1] Holders nonetheless received interest payments on the Founder Loan Notes monthly at an interest rate of 6% per year. These payments, from January 2006 to May 2011, totaled $709,683.83 to Carl Jungers; $365,061.81 to Michael Morgan; $120,829.37 to Daniel Jungers; $130,997.89 to David Jungers; and $14,469.89 to Sharon Morgan.

On April 7, 2010, Bore-Flex's directors, Carl Jungers, Todd Volker ("Volker"), and Michael Morgan, unanimously adopted a resolution to amend the Founder Loan Notes to provide for a 6% interest on the principal owed as of June 30, 2006 (the "April 2010 Resolution"). The Founder Loan Notes were subsequently amended to reflect the April 2010 Resolution.

In the fall of 2010, Bore-Flex and its shareholders decided to explore the sale of the business. Thereafter, at a shareholder meeting on January 17, 2011, Carl Jungers and Michael Morgan voted to adopt (with Volker dissenting) a resolution to amend the Founder Loan Notes to provide for payment on parity with unsecured creditors of Bore-Flex (the "January 2011 Resolution"). A board of directors meeting followed, at which Carl Jungers, Michael Morgan, and Volker unanimously elected Doug Jungers to an open fourth director position. Carl Jungers, Michael Morgan, Doug Jungers (collectively, "Director Defendants"), and Todd Volker then unani-

---

1. Section 6.4 of the Recapitalization Agreement provides that Bore-Flex "will pay the Shareholders owed the Founder Loan [Notes] quarterly payments of the profits, if any, earned in connection with the ... sales of the Permitted Lumber Product[.]"

mously adopted the January 2011 Resolution.

During March 10-18, 2011, Bore-Flex executed amendments to the Founder Loan Notes in favor of Holders with effective dates of January 17, 2011. Upon the sale of Bore-Flex to Bore-Flex, LLC, Bore-Flex paid Holders pursuant to the Founder Loan Notes, as amended, on parity with unsecured creditors. These payments totaled $570,137 to Carl Jungers; $311,095 to Michael Morgan; $242,242 to Daniel Jungers; and $270,015 to David Jungers. The monies that Bore-Flex received for the sale of its assets was insufficient to pay off the entire balances of the amended Founder Loan Notes and as a result nothing remained for the Bore-Flex shareholders as an ultimate distribution. Bore-Flex assigned to Michael Morgan and Carl Jungers two promissory notes that the company held from related entities: a $1.5 million promissory note from HHA Holding Company and a $200,000 promissory note from H&H Aero.

Plaintiffs brought nine claims against the various parties, as follows:

- Count 1 for breach of contract alleges that Holders violated the Recapitalization Agreement and Founder Loan Notes by approving and receiving payments on the Founder Loan Notes that were (1) not from sales of Permitted Lumber Product, (2) at a 6% interest rate, and (3) on a monthly basis.

- Count 2 for money had and received alleges that Holders' receipt of payments on the Founder Loan Notes was unjust.

- Count 3 for breach of fiduciary duty alleges that Carl Jungers and Michael Morgan, by facilitating payments on the Founder Loan Notes, breached their fiduciary duties to Bore-Flex.

- Count 4 for breach of fiduciary duty alleges that some or all of Attorney Defendants breached their fiduciary duty of undivided trust and loyalty to Bore-Flex by assisting with the April 2010 Resolution and the January 2011 Resolution and by meeting with Director Defendants about the Founder Loan Notes without Todd Volker in attendance.

- Count 5 for professional negligence alleges that some or all of Attorney Defendants were negligent in the exercise of their duty of care to Bore-Flex by failing to advise all of Bore-Flex's directors about Carl Jungers' and Michael Morgan's plan to amend the Founder Loan Notes, by failing to advise that the amendments violated the Recapitalization Agreement, and by failing to protect Bore-Flex from the amendments.

- Count 6 for civil conspiracy alleges that Director Defendants and Attorney Defendants conspired to improperly amend the Founder Loan Notes so that Holders would receive all of the sale proceeds from the Bore-Flex sale to Boreflex, LLC.

- Count 7 for rescission against Holders, and as an alternative to the cause of action in Count 1, alleges that the amendments to the Founder Loan Notes and assignments of the HHA Holding Company and H&H Aero notes from Bore-Flex to Carl Jungers and Michael Morgan should be rescinded because the amendments to the Founder Loan Notes was not supported by consideration, was not fair to Bore-Flex, was not approved in writing by all shareholders as required by the Recapitalization Agreement, and was ultra vires and the product of Carl Jungers' and

Michael Morgan's breaches of fiduciary duty.

- Count 8 for breach of fiduciary duty alleges that Carl Jungers and Michael Morgan breached their fiduciary duty to Bore-Flex by receiving indemnification from Bore-Flex for their attorney fees in this and related actions.

- Count 9 seeks a declaration that Carl Jungers and Michael Morgan are not entitled to indemnification and the imposition of a constructive trust on all legal fees advanced by Bore-Flex on behalf of Carl Jungers and Michael Morgan.

## POINT I

 In reviewing the decision to grant summary judgment, this Court applies the same criteria as the trial court in determining whether summary judgment was proper. [*ITT Commercial Fin. Corp. v. Mid-America Marine Supply Corp.*, 854 S.W.2d 371, 376 (Mo. banc 1993).] Summary judgment is only proper if the moving party establishes that there is no genuine issue as to the material facts and that the movant is entitled to judgment as a matter of law. *Id.* Only genuine disputes as to material facts preclude summary judgment. *Id.* at 378. A material fact in the context of summary judgment is one from which the right to judgment flows.

*Goerlitz v. City of Maryville, 333 S.W.3d 450*, 452–53 (Mo. banc 2011).

As noted, the trial court granted summary judgment on behalf of all Defendants on all of the counts, and yet, Plaintiffs' appeal challenges the grants of summary judgment on all of the counts in its first point. The point claims:

The trial court erred in granting all of the [Defendants'] motions for summary judgment because there existed multiple genuine issues of material fact as to [Plaintiffs'] shareholder derivative claims in that [Plaintiffs] properly controverted many of the [Defendants'] statements of material fact and [Plaintiffs] submitted numerous additional statements of material fact which were supported by specific references to discovery, exhibits and affidavits.

 Despite the fact that there will be separate material facts for each of the causes of action, Plaintiffs fail to distinguish between the material facts necessary for each cause of action and instead list seven "material facts" in dispute. First, we must note the point relied on wholly fails to comply with Rule 84.04(d).[2] That rule requires that a proper point relied on must: (1) identify the ruling or action of the trial court that is being challenged on appeal; (2) state the legal reason or reasons for the claim of reversible error; and (3) explain in summary fashion why, in the context of the case, the legal reason or reasons support the claim of reversible error. *Lombardo v. Lombardo*, 120 S.W.3d 232, 247 (Mo.App. W.D. 2003). " '[C]ompliance with Rule 84.04 briefing requirements is mandatory in order to ensure that appellate courts do not become advocates by speculating on facts and on arguments that have not been made.' " *Franklin v. Ventura*, 32 S.W.3d 801, 803 (Mo.App. W.D. 2000) (*quoting Myrick v. Eastern Broad, Inc.*, 970 S.W.2d 885, 886 (Mo.App. S.D. 1998)). "The failure to comply with Rule 84.04(d) warrants dismissal of the appeal." *Young v. Ernst*, 113 S.W.3d 695, 697 (Mo. App. S.D. 2003).

Here, Plaintiffs' point relied on fails to explain in summary fashion why, in the context of this case, the legal reason or

2. All rule references are to Missouri Court Rules (2017).

reasons support the claim of reversible error. Instead, they state only that they "properly controverted many of the [Defendants'] statements of material fact and [they] submitted numerous additional statements of material fact which were supported by specific references to discovery, exhibits and affidavits." This portion of the point relied on is merely an "abstract statement of the law, which is unacceptable in satisfying the requirements of Rule 84.04(d)." *Lombardo*, 120 S.W.3d at 247.

That deficiency could be cured in the argument if Plaintiffs had set forth each of the causes of action and at least one disputed material fact that related to each of the causes of action. Instead, Plaintiffs listed seven supposedly disputed material facts that they must be contending relate to all of the claims:

(1) whether Bore-Flex received any consideration for either the increase in the interest rate or the amendment of the Founders Loan Notes on January 17, 2011; (2) whether prior to this action [Defendants] always took the position that the Founders Loan Notes could only be paid from Bore-Flex's sales of Permitted Lumber Products; (3) whether Bore-Flex waived or ratified the requirement that the Founders Loan Notes would be paid from the sales of Permitted Lumber Product; (4) whether any amendment of the Founders Loan Notes required the unanimous written consent of all of the shareholders who signed the Recapitalization Agreement because the two documents must be read together; (5) whether the amendment of the Founders Loan Notes which allowed the notes to be paid from the sale of Bore-Flex's assets was fair as to the corporation and its shareholders; (6) whether during the votes on the resolutions to amend the Founders Loan Notes all of the material information

was disclosed to all of Bore-Flex's shareholders and directors; and (7) whether [Defendants] Morgan and Carl Jungers breached their fiduciary duties to Bore-Flex as officers and directors by privately profiting from the amendment of their Founders Loan Notes at the expense of the corporation.

Additionally, Plaintiffs point to actions of the Attorney Defendants with these "material" facts:

(1) whether the Attorney Defendants personally assisted and helped to orchestrate the Individual Defendants' actions to amend the Founders Loan Notes; (2) whether the Attorney Defendants met privately with [Defendants] Morgan and Carl Jungers with respect to their plans to amend the Founders Loan Notes to the exclusion of board member Todd Volker; (3) whether the Attorney Defendants privately told [Defendants] Morgan and Carl Jungers that their role was to protect their personal interests rather than the interests of their client, Bore-Flex; (4) whether prior to the filing of this action the Attorney Defendants repeatedly advised the parties that the Founders Loan Notes could only be paid from the sales of Permitted Lumber Product; (5) whether the Attorney Defendant[s] knew that improper payments were being made on the Founders Loan Notes from 2006 to 2011 but failed to advise their client, Bore-Flex; and (6) whether the Attorney Defendants failed to assure and determine that Bore-Flex received any consideration in exchange for the amendment of the Founders Loan Notes.

A cursory look at these "material" facts highlights the weakness of their points and arguments. Five of the facts appear to exclusively address the claims for rescission, and four of the facts address the

claims against the attorneys. None of the supposed disputed facts address claims on the original breach of contract claim, or money had and received.[3] The failure to delineate each material fact for each cause of action is fatal to their point. Plaintiffs fail to explain how these facts are "material," i.e., facts "from which the right to judgment flows." *Goerlitz*, 333 S.W.3d at 453. This Court may not "seine the record in search of materials to support [an appellant's] cause." *Jones-El v. Lombardi*, 506 S.W.3d 355, 356 (Mo.App. S.D. 2016) ("Engaging in a search for factual matter in the record to support an appellant's claims would put this court in the unacceptable position of becoming an advocate for appellant.") Point I must be denied.

## POINT II

■ Point II suffers from the same infirmities as Point I. Point II claims: "The trial court separately erred in granting the Individual Defendants' motions for summary judgment because the Individual Defendants were not entitled to judgment as a matter of law in that the court made numerous erroneous legal and factual conclusions in its summary judgment." In the argument portion of Plaintiffs' brief, these "erroneous legal and factual conclusions" were stated as follows:

(1) the Recapitalization Agreement and the Founders Loan Notes are not ambiguous and they do not require that the notes be paid exclusively or solely from Bore-Flex's sale of Permitted Lumber Products; (2) an amendment of the Founders Loan Notes does not require the approval of all shareholders who signed the Recapitalization Agreement; (3) consideration was given for the amendment of the Founders Loan

Notes; and (4) Bore-Flex relinquished or waived any requirement that the Founders Loan Notes be paid only from the sale of Permitted Lumber Product.

Although Point II violates Rule 84.04(d) for the same reasons stated above regarding Point I, we can discern an issue from the argument portion of Plaintiffs' brief. Although the point addresses multiple issues, each with separate legal standards of review, in one point, we can only address the first issue as to whether the Recapitalization Agreement and Founder Loan Notes are ambiguous, and, thus, whether summary judgment was appropriate as a matter of law. The trial court concluded that the Recapitalization Agreement and Founder Loan Notes were not ambiguous and did not require payment on the Founder Loan Notes to be made from sales of Permitted Lumber Products.

Plaintiffs argue—without citation to the record—that Individual Defendants' and Attorney Defendants' position (that neither the Recapitalization Agreement nor the Founder Loan Notes state that payments are to be made "only" or "solely" from Permitted Lumber Products) "goes against the realities and purpose of Bore-Flex's recapitalization and restructuring in January of 2006"; and is "disingenuous" because "[p]rior to this action, on at least two occasion, the Attorney Defendants were asked for their professional opinion as to how the Founder Loan Notes were to be paid, and they expressly advised Bore-Flex that the notes could 'only' be paid from the sales of Permitted Lumber Product." Plaintiffs' argument misses the mark. We resolve our analysis under the Uniform Commercial Code ("UCC") and not gener-

---

**3.** It is undisputed that Defendant Attorneys did not represent Bore-Flex or the directors at the time of the initial contract.

al contract law. To do so, we need only look to the Founder Loan Notes.[4]

The due execution and existence of the Founder Loan Notes are uncontroverted material facts in all of Plaintiffs' claims because every count in their petition arises from either alleged wrongful payments on the notes or alleged wrongful actions related to the payments made on the notes. All of Plaintiffs' claims flow from the same premise that, as a matter of law, the notes only state "one *source* of payment . . . the Company's net profits, if any, from the sale of Permitted Lumber Product. No other *source* of payment is identified" (emphasis added) and, because there were no such profits, the notes never became due or payable. That the notes by their terms "may be prepaid, in whole or in part, at any time" belies Plaintiffs' theory that payment was limited to "net profits, if any, from the sale of Permitted Lumber Product." Moreover, if those notes were due and payable on demand, as a matter of law, then all of the payments and actions taken related to those payments were lawful and Plaintiffs' claims, based upon a false premise, are meritless.

Article 3 of the UCC applies to negotiable instruments. Section 400.3-102.[5] Under that UCC article, the notes are negotiable instruments that are payable on demand. Section 400.3-104, RSMo Cum.Supp. 2005. This is so because:

- The promise in the first paragraph of each of the notes is "unconditional," as defined in section 400.3-106(a), because it does not state "(i) an express condition to payment, (ii) that the promise . . . is subject to or governed by another writing, or (iii) that rights or obligations with respect to the promise . . . are stated in another writing." In addition, section 400.3-106(b) provides that the promise "is not made conditional . . . because payment is limited to resort to a particular fund or *source*." (Emphasis added).

- The promise in the first paragraph of each of the notes is "payable on demand" by definition because it "does not state any time of payment." Section 400.3-108(a). It is not "payable at a definite time" because it is not "payable on elapse of a definite period of time after sight or acceptance or at a fixed date or dates or at a time or times readily ascertainable at the time the promise . . . [was] issued[.]" Section 400.3-108(b).

- Each of the notes is a "negotiable instrument" as defined by section 400.3-104(a). Each note is an unconditional promise (*see* section 400.3-106(a) and (b) discussed above) to pay a fixed amount of money with interest because it is "payable . . . to order at the time it issued . . .; payable on demand [*see* section 400.3-108(a)(2) discussed above] . . .; and does not state any other undertaking or instruction by the person promising or ordering payment to do any act in addition to the payment of money. . . ." Section 400.3-104(a).

The only references in the notes to another or a separate writing—the Recapitalization Agreement—are in the second paragraph of each note and are expressly included to supply the definitions for "Founder Loans" and "Permitted Lumber Product." Nothing in those supplied definitions contradicts, modifies, or creates an ambiguity in any of the provisions in the

---

**4.** All of the Founder Loan Notes followed the same form. A representative example is attached as an appendix to the opinion.

**5.** All references to statutes are to RSMo 2000, unless otherwise specified.

notes. Thus, the trial court did not err in finding as a matter of law that that the notes did not have to be paid exclusively or solely from the sale of the Permitted Lumber Product. Summary judgment was appropriate. Point II is denied.

## POINT III

It should be noted that because Plaintiffs' claim of damages assumes that improper payments were made on the Founder Loan Notes, if summary judgment was proper for Individual Defendants then, by extension, summary judgment was proper for Attorney Defendants. We have determined that summary judgment was proper for Individual Defendants, therefore, summary judgment was proper for Attorney Defendants. Plaintiffs' complaints against Attorney Defendants involve the attorneys' actions subsequent to the making of the Founder Loan Notes. Because there was no error in granting summary judgment for Individual Defendants on the loan notes, there is no error in granting summary judgment for Attorney Defendants on the subsequent claims. Point III is denied.

## POINT IV

Point IV claims error in granting Bore-Flex's motion for a protective order and to compel the return of certain documents because the documents are not protected by either the attorney-client privilege or the work product doctrine. Plaintiffs claim that any such claim of privilege was waived when the documents were voluntarily produced by Bore-Flex's directors more than 1-1/2 years prior to litigation and then later disclosed by the parties in various pleadings filed in this case and in the previous federal action.

The documents in question are two sets of Handwritten Notes by an attorney that pertain to conference calls between Attorney Defendants and individual shareholders. The Handwritten Notes had been produced during discovery in the prior federal action. The court properly granted Bore-Flex's motion for a protective order and to compel the return of certain documents. The record reflects that when Plaintiffs propounded their First Requests for Admission to Defendant Cantwell, attaching a copy of the Handwritten Notes, Bore-Flex moved for a protective order, claiming that the Handwritten Notes were privileged and must be returned. The trial court granted Bore-Flex's motion, finding that the Handwritten Notes "are entitled to protection by the attorney-client privilege and/or the attorney work-product doctrine[,]" that "[p]roduction of Bore-Flex's privileged documents to a Bore-Flex director did not operate to waive Bore-Flex's privilege, and Volker could not unilaterally waive Bore-Flex's privilege by providing the documents to Plaintiffs[,]" and that "[t]he documents are privileged, and Bore-Flex has not waived the privilege."

Plaintiffs do not dispute the nature of Handwritten Notes as attorney-client communications or attorney work product. Instead, they assert that (1) an exception to privilege should apply because this is a shareholder derivative case; and (2) Bore-Flex waived any privilege by producing the Handwritten Notes during the course of litigation.

In support of their first argument, Plaintiffs rely on Delaware Chancery Court opinion, *Grimes v. DSC Communications Corp.*, 724 A.2d 561 (Del. Ch. 1998). At issue in *Grimes* was the "fiduciary exception" to the corporate attorney-client privilege that originated in *Garner v. Wolfinbarger*, 430 F.2d 1093 (5th Cir. 1970). *See Grimes*, 724 A.2d at 568. *Garner* crafted a "narrow exception" to a corporation's attorney-client privilege, "where a corporation's shareholder sought privileged com-

munications in connection with a derivative action that sought to enforce the rights of the corporation against the corporation's officers and directors." *In re PWK Timberland, LLC*, 549 B.R. 366, 370 (Bankr. W.D. La. 2015).

Plaintiffs' argument is problematic for three reasons. First, it appears that no Missouri court has ever applied the exception announced in *Garner*. Second, *Garner* has been called into question by some courts.

> *Garner* has not been adopted by the United States Court of Appeals for the Eighth Circuit. In fact, "*Garner*'s continued vitality is suspect ... even in federal courts." *Hoiles v. Superior Ct.*, 157 Cal.App.3d [1192] at 1198–99, 204 Cal. Rptr. 111 [ (1984) ]. Many commentators believe "Garner was wrong and ... the attorney-client privilege in shareholder cases should apply just at it does in other litigation." Stephen A. Saltzburg, Corporate Attorney–Client Privilege in Shareholder Litigation and Similar Cases: Garner Revisited, 12 Hofstra L.Rev. 817, 840 (1984) (This and other like commentary is cited and discussed in Defs.' Reply Br. at 11–14.). *But see* Jack B. Weinstein et al., Weinstein's Evidence ¶ 503(b)[05], at 503–93–98 (1992) (approving Garner, but recognizing that the issue is "currently unresolved and troublesome").

*Milroy v. Hanson*, 875 F.Supp. 646, 651 (D. Neb. 1995). Third, "[t]he wide majority of courts ... have held that the fiduciary exception does not apply to work product immunity." *Jicarilla Apache Nation v. United States*, 88 Fed.Cl. 1, 13 (2009). Here, Plaintiffs do not dispute that the Handwritten Notes constitute attorney work product.

Plaintiffs' second argument is also problematic. "The attorney-client privilege belongs to the client." *State v. Timmons*, 956 S.W.2d 277, 285 (Mo.App. W.D. 1997). "To waive [a confidential privilege] by means of disclosure of information, the disclosure must be voluntary." *State ex rel. Chance v. Sweeney*, 70 S.W.3d 664, 670 (Mo.App. S.D. 2002). "[D]isclosure 'in response to an adverse party's discovery inquiry is not voluntary.'" *State ex rel. Behrendt v. Neill*, 337 S.W.3d 727, 729-30 (Mo.App. E.D. 2011) (quoting *Sweeney*, 70 S.W.3d at 670).

Here, the record reveals that the Handwritten Notes were (1) provided to Volker in discovery, and (2) filed as exhibits in the instant action by Plaintiffs and Attorney Defendants in their separate motions for summary judgment. Plaintiffs have not pointed to an instance where *Bore-Flex* produced the Handwritten Notes *voluntarily*. Point IV is also denied.

The judgment is affirmed.

## Appendix

**Appendix**

$ _1,238,365. 75_

<span>**PROMISSORY NOTE**</span>

_APRIL_
~~January~~___, 2006

FOR VALUE RECEIVED, the undersigned, Lifetime Lumber, Inc., a Missouri corporation ("Maker"), promises to pay to the order of Michael R. Morgan, and his successors and assigns ("Holder"), the sum of _1,238,365.75_ Dollars ($_____), in lawful money of the United States of America, together with interest thereon to be computed from the date first written above at a rate of five percent (5%) per annum, **but effective June 30, 2006, at a rate of 6% per annum.** _TV UP_

Payments on the outstanding principal and accrued interest will be made on the thirtieth (30th) day following the end of each calendar quarter (with the first such payment to be made on April 30, 2006) for so long as a balance is owed hereunder and will be equal to (1) the Holder's then-current percentage of outstanding Founder Loans, as that term is defined under that certain Recapitalization and Restructuring Agreement, dated effective as of January 1, 2006, by and among Maker, Bore-Flex Industries, LLC, and the shareholders of Maker including Holder (the "Recapitalization Agreement"), multiplied by (2) the net profits of the Maker earned in the preceding calendar quarter from sales of the Permitted Lumber Product, as defined in the Recapitalization Agreement. All payments will be applied first to accrued interest and then to principal.

Maker waives demand, presentment for payment, notice of nonpayment, protest, notice of protest, all other notices, filing of suit and diligence in collecting this Note. Maker further agrees that it will not be necessary for any Holder, in order to enforce payment of this Note, first to institute or exhaust its remedies against any maker or any other party liable therefor or to enforce its rights against any security for this Note and hereby consent to the renewal and extension from time-to-time of this Note, or any indulgence with respect thereto, without notice of such renewal, extension, or indulgence. No failure by Holder hereof to exercise, and no delay in exercising, any right or power hereunder shall operate as a waiver thereof, nor shall any single or partial exercise by Holder of any right or power hereunder preclude any other or further exercise thereof or the exercise of any other right or power. The rights and remedies of Holder as herein specified are cumulative and not exclusive of any other rights or remedies which Holder may otherwise have.

The outstanding principal balance may be prepaid, in whole or in part, at any time without penalty. This Note shall be governed by and construed in accordance with the laws of the State of Missouri without regard for its conflicts of laws principles. Holder and Maker hereby irrevocably and unconditionally consent and submit to the personal jurisdiction and venue of any state or federal court sitting in Jackson County, Missouri, with respect to any action to enforce this Note and the transactions contemplated hereby, and Holder and Maker also expressly consent and submit to and agree that venue in any such action is proper in said courts and county, and Holder and Maker hereby expressly waive any and all personal rights under applicable law or in equity to object to the jurisdiction and venue of said courts and county. The jurisdiction and venue of the courts and county consented and submitted to and agreed upon in this paragraph are exclusive. Time is of the essence of this Note. No modification, rescission, waiver, release, or amendment of any provision of this Note shall be made except by a written agreement executed by Maker and Holder hereof. In the event of Maker's failure to make the payment required hereunder on the Payment Date, Holder may withhold or offset any monies owed by Holder to Maker in satisfaction of Maker's payment obligations due and not paid under this Note.

IN WITNESS WHEREOF, this Note has been duly executed by the undersigned effective as of the day and year first above written.

LIFETIME LUMBER, INC.

Mike Morgan, President

12747143